## STATE v. WILLIE TATE.

(Filed 4 November, 1936.)

1. **Homicide G d—Testimony that witness identified accused prior to trial in his absence held competent as corroborating her testimony at trial.**

   Where a witness upon the trial identifies the accused as the man who shot and killed her companion and assaulted her, testimony that, prior to the trial, she told the sheriff, in the absence of the accused, that the voice of the accused, whom she had heard talking in the sheriff's office, was the voice of the man who had committed the crime, is competent as tending to corroborate her testimony at the trial.

2. **Homicide G d—Testimony that accused was frequently seen prior to homicide at scene of the crime on lonely road held competent.**

   Testimony that accused had been frequently seen near the scene of the homicide on a lonely road at nighttime within a few weeks of the homicide, and that on one occasion about two weeks prior thereto he had fired a pistol at the witness as he passed the scene of the crime, *is held* competent as tending to identify the accused as the perpetrator of the crime.

3. **Criminal Law G l—Where evidence shows that confession was voluntarily signed, an exception to its admission in evidence cannot be sustained.**

   Where there is no evidence that the confession of the accused, made to the officer having him in custody, was made under the influence of violence, or threats of violence, or under the inducement or hope of a reward, but the evidence shows that the confession was freely and voluntarily signed by accused, the confession is competent, and an exception to its admission cannot be sustained.

4. **Homicide H c—**

   Where all the evidence discloses that the crime was murder in the first degree, it is not error for the trial court to fail to submit to the jury the question of defendant's guilt of lesser degrees of the crime.

APPEAL by defendant from *Frizzelle, J.,* at March Term, 1936, of PITT. No error.

This is a criminal action in which the defendant Willie Tate was tried on an indictment for the murder of Alexander Warren.

There was a verdict that the defendant is guilty of murder in the first degree.

From judgment that he suffer death by means of asphyxiation, as prescribed by statute, the defendant appealed to the Supreme Court, assigning errors in the trial.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*S. O. Worthington for defendant.*

CONNOR, J.    At the trial of this action, the evidence showed that at about 11 o'clock on the night of 28 February, 1936, as he sat in his automobile which was parked on a public road near the city of Greenville, in Pitt County, N. C., Alexander Warren was shot and killed by a man who had suddenly opened the right-hand door of his automobile, and after shooting the deceased, had assaulted a young woman, who was sitting beside him at the time he was shot, with intent to commit rape.

Miss Helen Phelps, a witness for the State, testified as follows:

"I live in Greenville and am nineteen years of age.    I knew Alexander Warren.    He and I were engaged to be married to each other.

"I saw him on the night of 28 February, 1936.    Caswell Brown and Miss Margaret Hardy came to my home at about 8 :30 o'clock that night. I went with them to Dal Cox' filling station, where we met Alexander Warren.    We rode around together in an automobile until about 10 :30 o'clock, when Caswell Brown and Miss Hardy left us.    Alex and I then drove in his automobile out on the road leading from the Falkland Highway to the Fair Grounds.    He parked his automobile on this road, and turned on the radio.    I was sitting beside him, on his right.    As he was dialing the radio, the right-hand door of the automobile was opened suddenly, and a man put his arm around my shoulder.    As he did so, I cried out, and Alex started to rise from under the wheel.    At that moment, a pistol was fired.    The man then dragged me from the automobile and assaulted me.    He did not succeed in his attempt to rape me. I attempted to escape from him, and he kept saying to me, 'Be quiet. All right, all right.'    An automobile drove up while he was attempting to rape me, and he ran off.    I returned to the automobile and found Alex unconscious.    I did not know that he was dead.    I got into the automobile and pushed Alex from under the wheel.    I then drove to Dal Cox' filling station.    I there discovered that Alex was bleeding. Some one took me first to the sheriff's office, and then to the hospital. I showed the sheriff the scratches and bruises on my person and told him what had occurred.

"Several days after that night, at his request, I went to the sheriff's office. When I got there he told me to stand outside the door. The door was cracked. As I stood there I heard the voices of two persons who were talking in the office. I recognized the voice of one of these persons as the voice of the man who had shot Alexander Warren and assaulted me on the night of 28 February, 1936, and so informed the sheriff. It was the voice of the defendant. I then saw the defendant and identified him by his voice and by his physique as the man who shot Alexander Warren and assaulted me. I am positive that the defendant is the man."

S. A. Whitehurst, sheriff of Pitt County, a witness for the State, testified as follows:

"I was called about 11:40 o'clock on the night of 28 February, 1936. I went to the door and found Miss Phelps and some gentlemen in an automobile near the jail. She was very nervous. She told me that she had been assaulted. I went to Dal Cox' filling station, and there found the dead body of Alexander Warren. He had been shot in the right shoulder. The pistol ball had cut the artery above his heart, and had lodged in his ribs. I turned the body over to the undertaker and went back to the hospital, where I talked with Miss Phelps. I then went to the place where she said she had been assaulted. I found where an automobile had been parked on the road. I saw tracks of a man and a woman leading from the place where the automobile had been parked for a distance of about 126 yards. There were signs of a struggle along the path made by the tracks. I found articles of underclothing which appeared to have been torn from the person of a woman. When I saw Miss Phelps in the automobile that night at the jail, there were scratches and bruises on her person. Her clothing had been torn.

"A few days later—within a week—I arrested the defendant Willie Tate in Greenville, and took him to my office. I sent for Miss Phelps. When she came to my office, I requested her to stand outside the office near a door which was cracked or partly opened. While she stood there, I questioned the defendant and another man in my office. The defendant denied any knowledge of the crime. After she had heard his voice through the door, Miss Phelps told me that she recognized his voice as the voice of the man who had shot Alexander Warren and assaulted her on the night of 28 February, 1936. She said, 'Sheriff, that's the man.' I said, 'Let's be sure.' She replied, 'I am positive.' She was then taken into the presence of the defendant and said to him, 'You are the man who killed my companion and assaulted me on the night of 28 February, 1936.' He denied that he was the man, but subsequently admitted to me that he was present when Alexander Warren was shot and when Miss Phelps was assaulted.

"A few minutes after Miss Phelps had identified him as the man who had shot and killed Alexander Warren, the defendant made a statement to me, in the presence of Mr. George Clark and my secretary, Miss Barr. No threats were made or rewards offered to the defendant to induce him to make this statement. The statement was written down by Miss Barr and signed by the defendant."

The written statement signed by the defendant was offered in evidence by the State. In this statement the defendant said that on the night of 28 February, 1936, he, Otis Watson, and George Lee were at a tobacco barn near the public road leading from the Falkland Highway to the Fair Grounds; that their purpose was to rob persons who might pass along the road in automobiles; that when an automobile in which a man and woman were riding stopped on the road and parked, he, Otis Watson, and George Lee went to the automobile. He said: "George Lee opened the door and Otis Watson shot the man. George pulled the woman out of the automobile. He and I dragged her up the road a little piece. George tore her bloomers off. We both threw her down and tried to get on her. Otis saw an automobile coming and whistled. I ran across the field to the road. I fell into a ditch and got my shoes muddy. I then went home and washed my shoes."

There was evidence offered by the State tending to corroborate the testimony of both Miss Phelps and Sheriff Whitehurst both as to the commission of the crime charged in the indictment and as to the identity of the defendant as the man who committed the crime.

No evidence was offered by the defendant. On his appeal to this Court, he assigns as error: (1) The admission, over his objections, of evidence tending to show that Miss Phelps told the sheriff in the absence of the defendant that she recognized his voice, while he was talking in the sheriff's office, as the voice of the man who had shot and killed Alexander Warren on the night of 28 February, 1936; (2) The admission, over his objections, of evidence tending to show that the defendant had been frequently seen in the nighttime at or near the place of the homicide, during the two or three weeks preceding the homicide; and (3) The admission, over his objection, of the statement signed by the defendant, admitting that the defendant was present 'at the time the homicide was committed.

These assignments of error cannot be sustained. No reasons are given or authorities cited in the brief filed in this Court on behalf of the defendant in support of these assignments of error. Rule 28, Rules of Practice in the Supreme Court. 200 N. C., 831.

Miss Phelps at the trial identified the defendant as the man who committed the crime charged in the indictment. The testimony tending to show that she told the sheriff in the absence of the defendant that the

voice of the defendant, which she heard while he was talking in the sheriff's office, was the voice of the man who had shot and killed Alexander Warren on the night of 28 February, 1936, was competent as evidence tending to corroborate her testimony at the trial.

The testimony of Ike Anderson that he had seen the defendant at least ten or twelve times near the scene of the homicide, during the nighttime and within a few weeks prior to the homicide and that on one occasion about two weeks before the homicide the defendant had fired a pistol at the witness as he passed the scene of the homicide in his automobile, was competent as evidence tending to identify the defendant as the man who committed the crime charged in the indictment. See *State v. Miller,* 189 N. C., 695, 128 S. E., 1.

There was no evidence tending to show that the defendant made the statement which was offered in evidence by the State under the influence of violence or threats of violence, or under the inducement of a reward or the hope of a reward. The uncontradicted evidence shows that the statement was made, and when reduced to writing, was signed by the defendant, freely and voluntarily. For that reason it was competent as evidence against the defendant, although made by him to the officer who had him in custody. See *State v. Grier,* 203 N. C., 586, 166 S. E., 387.

All the evidence at the trial showed that the homicide was murder. There was no evidence tending to show that the homicide was manslaughter. There was therefore no error in the instruction of the court to the jury with respect to the verdict which they should return, on the facts as they should find them to be from all the evidence. See *State v. Satterfield,* 207 N. C., 118, 176 S. E., 466.

The judgment is affirmed.

No error.