STATE OF NORTH CAROLINA v. BOBBY PERRY
No. 19

(Filed 15 October 1969)

**1. Criminal Law § 34— evidence of defendant's release from prison — competency — identification of defendant**

In a prosecution for kidnapping and rape in which the prosecutrix testified that her assailant told her he had been released from prison the day before the events related by her occurred, testimony by the supervisor of a unit of the prison system that defendant had been released from his unit on the day preceding those events is competent on the issue of the identity of defendant, notwithstanding the supervisor's testimony tended to show that defendant had committed some other crime and the prosecutrix had made an in-court identification of defendant.

**2. Criminal Law § 24— effect of plea of not guilty**

Defendant's plea of not guilty puts in issue every material element of the charges against him.

**3. Criminal Law § 66— identification of defendant — admission of other evidence**

In a prosecution for kidnapping and rape, it was not necessary for the State to rely solely upon the prosecutrix' in-court identification of defendant as her assailant, but the State could introduce other evidence, not otherwise incompetent, which was relevant to the identification of the assailant.

**4. Criminal Law § 34— defendant's guilt of other offenses — competency of evidence**

In the trial of an accused who has not testified as a witness in his own

behalf, the State may not, over objection by defendant, introduce evidence to show that the accused has committed another independent, separate criminal offense where such evidence has no other relevance to the case on trial than its tendency to show the character of the accused and his disposition to commit criminal offenses.

**5. Criminal Law § 34— identity of defendant — evidence of other offenses**

Evidence relevant to the question of the identity of the accused with the perpetrator of the offense with which he is presently charged is not rendered incompetent by the mere fact that it discloses the commission by him of some other criminal offense.

**6. Criminal Law §§ 34, 66— identification of defendant — defendant's guilt of other crimes — competency of evidence**

Where the identity of the defendant and the perpetrator of the offense with which he is charged is at issue, evidence tending to show his commission of another criminal offense, and thereby to show his identity with the perpetrator of the offense with which he is presently charged, is not rendered incompetent by the fact that a witness has testified to such identity.

**7. Criminal Law § 162— objection to evidence — motion to strike**

An objection must be interposed to an improper question without waiting for the answer and, if the objection is not made in apt time, a motion to strike a responsive answer is addressed to the discretion of the trial court, except where the evidence is rendered incompetent by statute.

**8. Criminal Law § 51— medical expert testimony — failure to qualify witness as expert**

In a prosecution for kidnapping and rape, the admission of a doctor's opinion testimony as to his interpretation of the result of a laboratory test on certain specimens taken from the person of the prosecutrix, *held* harmless error notwithstanding there was no specific finding by the court that the witness was an expert, since defendant did not object to the doctor's being accorded the status of an expert witness, and since the doctor's testimony was a foregone conclusion in view of his earlier testimony, admitted without objection, concerning the nature and conclusiveness of the test.

**9. Criminal Law § 51; Evidence § 48— qualification of expert witness — necessity for findings**

In the absence of a request by the appellant for a finding by the trial court as to the qualifications of a witness as an expert, it is not essential that the record show an express finding on this matter, the finding, one way or the other, being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness.

**10. Criminal Law § 42— articles connected with crime — bag and playing cards — admissibility**

In a prosecution for kidnapping and rape, trial court properly admitted into evidence a bag and its contents that included a deck of cards bearing the name of defendant, the bag being found within two hours after the

kidnapping and within a short distance from the parking lot where the prosecutrix was first accosted and seized by her assailant.

### 11. Rape § 6— instructions

In a prosecution for rape, the trial court in its charge correctly defined the offense of rape and instructed the jury as to its elements, and the verdicts which the jury might render upon the indictment.

### 12. Kidnapping § 1— definition of the offense — instructions

An instruction that kidnapping is the taking and carrying away of a human being by physical force or by constructive force unlawfully and without lawful authority, *held* sufficient.

### 13. Kidnapping § 1— sufficiency of instructions

In a prosecution for kidnapping, an instruction that the jury is to return a verdict of guilty of kidnapping if they should find "from the evidence beyond a reasonable doubt that this defendant did by the use of force, by the threat of force sufficient to cause the prosecuting witness to leave the place where she had a right to be and was and goes to some other place under the control and direction of defendant without any lawful authority," *held* without error.

APPEAL by defendant from *McKinnon, J.,* at the Special March 1969 Criminal Session of WAKE.

By separate indictments, each proper in form, the defendant was charged with the kidnapping and the rape of Williamean Creekmore Womble on 27 September 1968. Upon motion of his court appointed counsel, he was committed to Dorothea Dix Hospital in Raleigh to determine his mental capacity to plead to the charges against him. Following the prescribed period of examination, he was returned to the court by the hospital authorities as competent to stand trial. In due time his counsel moved to quash each bill of indictment, each of which motions was denied. He thereupon entered a plea of not guilty to each charge.

By consent the two cases were consolidated for trial. Upon the charge of rape, the jury returned a verdict of guilty with a recommendation that the defendant be sentenced to life imprisonment. Judgment was entered in that case in accordance with the verdict. Upon the charge of kidnapping, the jury found the defendant guilty as charged. Judgment was entered in that case that the defendant be imprisoned for life in the State prison, this sentence to run concurrently with the sentence imposed in the rape case. From each judgment the defendant appealed.

The defendant offered no evidence. The evidence for the State consisted of the testimony of Mrs. Womble, Detective Sergeant Jones of the Raleigh Police Department, Maurice Henry, a supervisor of

the Wake Advancement Center of the North Carolina Department of Correction, and Dr. Arthur Rogers Summerlin, together with an exhibit consisting of certain articles found by the police near the scene of the alleged kidnapping.

In substance, Mrs. Womble testified as follows:

She is a night operator for the Southern Bell Telephone Company in Raleigh. On 27 September 1968, she drove her automobile into a church parking lot across the street from her place of employment at about 9:45 p.m. As she was in process of getting out of her automobile, the defendant, whom she identified in the courtroom, came up from behind her and seized her by the shoulder. He ordered her to get back in the car, saying that if she did as he told her he would not hurt her. She saw that he had a knife in his hand, the blade of which was approximately three inches long. He kept it in his hand throughout the events to which she testified. She offered him her money and the automobile if he would let her go. In reply, he ordered her to get in the car and do as he directed. Seeing the knife, she reentered the car and the defendant also got in it. At his direction she drove from the parking lot and out of the city, making turns as specified by him from time to time, he telling her repeatedly to do as he directed and she would not be hurt.

At a point outside the city, some ten miles from the parking lot, he directed her to turn off the highway and, upon reaching a dead end road, to stop the car. At that point he had sexual intercourse with her without her consent, retaining the knife in his hand at all times.

Thereupon, they drove back to the city after she persuaded him that if he would let her go she would not report the matter to the police. In the course of this conversation, he told her he had been in prison and had been released just the day before this occurrence. He told her that if she did "turn him in" he would "get" her.

Upon returning to the city, she let him out of the automobile, returned to the parking lot, went to the office of her employer and reported the matter. Upon arrival of the police officers, she told them what had occurred and described the defendant, relating to them his statement that he had been released from prison the day before. She picked the defendant's picture out of each of two lots of photographs shown to her by the police officers.

Within the city, the route followed by her, with the defendant in her automobile, was lighted so that she had a clear view of him. Though she passed many stop lights and at one time was followed

by a police car, she did not seek assistance because of the knife in the hand of the defendant. She had never seen the defendant prior to this occurrence. She was examined at the hospital by Dr. Summerlin.

Detective Sergeant Jones testified, in substance:

After talking with Mrs. Womble, which he did approximately two hours after her first arrival at the parking lot, he searched the parking lot and the church grounds adjacent to it. Under some shrubbery in the church grounds he found a bag containing a deck of cards and a box of hair dye. The point at which this was found was twelve feet west of the parking lot and immediately across that lot from where her car was parked on the east side of it. Attached to the deck of cards, when it was so found by the officer, was a piece of paper with the name "Bobby Perry" written upon it. (These items were introduced in evidence as the State's Exhibit No. 1. The side of the paper bearing the name "Bobby Perry" was exhibited to the jury, but the reverse side bearing other information relative to the State Department of Correction was not shown to the jury.) Sergeant Jones arrested the defendant upon the street at approximately 10 a.m. the morning after the alleged offenses.

Mr. Henry testified, in substance:

He is a supervisor of the Wake Advancement Center of the North Carolina Department of Correction. He knows the defendant. The defendant was an inmate of that institution prior to his release therefrom on 26 September 1968 (the day preceding the events related by Mrs. Womble).

Dr. Summerlin testified, in substance:

He is licensed to and does practice medicine in North Carolina, specializing in obstetrics and gynecology. He has had specifically described medical education and practice. In the early morning of 28 September 1968, he examined Mrs. Womble in the emergency room at Rex Hospital. Certain specimens and smears were taken from her person and sent to the laboratory for analysis. The tests showed the presence in the specimens of acid phosphatase in large quantity, indicating sexual intercourse.

The defendant assigns as error the denial of his motion to quash the bills of indictment, various rulings of the court upon objections to the admission of evidence, the denial of his motion in each case for judgment of nonsuit, and numerous portions of the court's charge to the jury.

*Attorney General Morgan and Deputy Attorney General Moody for the State.*

*Alfonso Lloyd and R. P. Upchurch for defendant.*

LAKE, J.

[1]    Without objection, Mrs. Womble testified that her assailant told her he had been released from prison on the day before the events related by her occurred. The defendant assigns as error the admission, over his objection, of testimony by the supervisor of the Wake Advancement Center, a unit of the prison system, that the defendant had been released from the Center on the day preceding those events. There was no error in this ruling.

[2, 3]    The defendant offered no evidence. Nevertheless, his plea of not guilty put in issue every material element of the State's charges against him. The identity of the defendant with the perpetrator of the acts to which Mrs. Womble testified was obviously a material issue. It remained an issue notwithstanding Mrs. Womble's in-court identification of the defendant as her assailant. The defendant did not admit that he was the person who accompanied Mrs. Womble at the time in question. It was not necessary for the State to rely solely upon the identification made by Mrs. Womble in proving its contention that he was that person. It could introduce other evidence, not otherwise incompetent, which was relevant to the identification of the assailant.

The statement by the assailant placed him within a narrowly limited group — men released from prison the preceding day. Had the group been, instead, men released from a specified hospital or other group on a specified date, evidence that the accused was released from such institution or group on such date would clearly be competent in the absence of other ground for objection.

The defendant contends that testimony of his release from prison was incompetent because it is evidence that he committed a criminal offense other than those for which he is presently indicted.

[4-6]    It is well settled that in the trial of one accused of a criminal offense, who has not testified as a witness in his own behalf, the State may not, over objection by the defendant, introduce evidence to show that the accused has committed another independent, separate criminal offense where such evidence has no other relevance to the case on trial than its tendency to show the character of the accused and his disposition to commit criminal offenses. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 365; *State v. Fowler,* 230 N.C. 470,

53 S.E. 2d 853; Stansbury, North Carolina Evidence, 2d Ed, § 91; 29 Am. Jur. 2d, Evidence, § 320. It is, however, equally well settled that evidence relevant to the question of the identity of the accused with the perpetrator of the offense with which he is presently charged is not rendered incompetent by the mere fact that it discloses the commission by him of some other criminal offense. *State v. McClain, supra; State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352; *State v. Stancill,* 178 N.C. 683, 100 S.E. 241; 29 Am. Jur. 2d, Evidence, §§ 321, 322. Thus, in *State v. Spencer,* 176 N.C. 709, 97 S.E. 155, a witness having testified that she observed at the scene of the offense charged a man named Spencer "who had been in the reformatory," the State was permitted to show that the defendant Spencer had been an inmate of the reformatory. Where the identity of the defendant and the perpetrator of the offense with which he is charged is at issue, the evidence tending to show his commission of another criminal offense, and thereby to show his identity with the perpetrator of the offense with which he is presently charged, is not rendered incompetent by the fact that a witness has testified to such identity. *State v. Biggs, supra; State v. Tate,* 210 N.C. 613, 188 S.E. 91. In the present case, the testimony did not disclose the details or even the nature of the offense for which the defendant had previously been imprisoned.

[7] The defendant also assigns as error the admission in evidence of certain testimony by Dr. Summerlin. This witness testified that specimens taken by him from the person of Mrs. Womble shortly after the alleged assault were "sent to the laboratory" for a test for acid phosphatase. In response to the question, "What was the finding in this particular test?" he answered, "7,824 units per cc." At that point the defendant objected and moved to strike the answer. The record strongly indicates, if it does not require, the conclusion that the witness was not the person who made the test. Thus, the question was subject to objection on the ground that it called for hearsay evidence. However, it is well settled that an objection must be interposed to an improper question without waiting for the answer and, if the objection is not made in apt time, a motion to strike a responsive answer is addressed to the discretion of the trial court, except where the evidence is rendered incompetent by statute. *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341; *State v. Warren,* 236 N.C. 358, 72 S.E. 2d 763; *State v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; *State v. Stancill, supra; State v. Pitts,* 177 N.C. 543, 98 S.E. 767; *State v. Merrick,* 172 N.C. 870, 90 S.E. 257; *State v. Lowry,* 170 N.C. 730, 87 S.E. 62; *State v. Lane,* 166 N.C. 333, 81 S.E. 620; Stansbury, North Carolina Evidence, 2d Ed, § 27, note 95. In the

present instance, the answer was responsive, there is no statute involved and there is nothing to indicate abuse of discretion in the ruling of the trial court.

[8]　There is, likewise, no merit in the contention of the defendant that it was error for the court to permit Dr. Summerlin to give his opinion as to the interpretation of the result of this test. Uncontradicted and unchallenged testimony in the record is ample to support a finding that Dr. Summerlin is a medical expert, qualified to testify as an expert witness in the field to which his testimony in this case relates. The basis for the contention of the defendant is the following statement in the record before us, apparently a stipulation by counsel in the preparation of the record on appeal:

> "The State did not request the court to find this witness to be an expert. The court did not make a finding that this witness was an expert; the defendant did not admit this witness to be an expert, and the defendant did not object to testimony of this witness on the ground that he was not an expert."

[8, 9]　In the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show an express finding on this matter, the finding, one way or the other, being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness. *Paris v. Aggregates, Inc.,* 271 N.C. 471, 157 S.E. 2d 131; *Kientz v. Carlton,* 245 N.C. 236, 96 S.E. 2d 14; *State v. Coal Company,* 210 N.C. 742, 188 S.E. 412; *Brewer v. Valk,* 177 N.C. 476, 99 S.E. 358; Stansbury, North Carolina Evidence, 2d Ed, § 133; Strong, N. C. Index, 2d Ed, Evidence, § 48. Here, the record shows the defendant did not object to Dr. Summerlin's being accorded the status of an expert witness. Though it would have been better practice for the solicitor to have tendered him formally as an expert, and for the court so to rule expressly, under the circumstances disclosed in this record there was no error in permitting the witness to state his opinion in response to a question otherwise competent. Furthermore, his testimony as to the interpretation of the result of the test was a foregone conclusion in view of earlier testimony by him, admitted without objection by the defendant, concerning the nature and conclusiveness of the test. Thus, the overruling of the objection to the specific question and answer, which the defendant assigns as error, was, at the most, harmless error.

[10]　There was no error in the admission of the State's Exhibit No. 1. The bag and its contents were found in the adjoining lot and only a short distance from the place where Mrs. Womble's car was

parked when she was first accosted and seized by her assailant. It was found by a search of the area approximately two hours after the alleged kidnapping. Taped to the deck of cards in the bag was a paper bearing the name of the defendant. The relevance of this evidence as corroboration of Mrs. Womble's identification of the defendant as her assailant is obvious. Its weight was, of course, for the jury.

[11, 12] The assignments of error relating to the instructions to the jury are without merit. The court in its charge correctly defined the crime of rape and instructed the jury correctly as to its elements, the burden of proof and the verdicts which the jury might render upon the indictment charging the defendant with that offense. See: *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225; *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190. As to the crime of kidnapping, the court instructed the jury, "Kidnapping is the taking and carrying away of a human being by physical force or by constructive force *unlawfully and without lawful authority.*" (Emphasis added.) This definition is in accord with our decision in *State v. Lowry and State v. Mallory,* 263 N.C. 536, 139 S.E. 2d 870. See also: *State v. Arsad,* 269 N.C. 184, 152 S.E. 2d 99; *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406; *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118.

The defendant complains that the court in its charge did not instruct the jury that in order to return a verdict of guilty, upon the indictment charging the defendant with kidnapping, it must find beyond a reasonable doubt that the acts were done "unlawfully", "wilfully", and "feloniously" or "with felonious intent" and that the court failed in its instructions to define the terms "feloniously" or "with felonious intent." In *State v. Witherington,* 226 N.C. 211, 37 S.E. 2d 497, this Court said that it is not sufficient to instruct the jury that it should return a verdict of guilty of kidnapping if the State has satisfied it beyond a reasonable doubt that the defendant "did forcibly take and carry away the person of the prosecuting witness." There, this Court said "there must be a further finding that the taking and carrying away was unlawful or done without lawful authority or effected by fraud."

[13] We need not determine whether such an instruction is essential where, as here, the defendant offers no evidence and there is neither any evidence nor any assertion that he had a lawful right or authority to force the alleged kidnap victim to accompany him from one place to another. For the present, it is sufficient to note that, in addition to the above quoted definition of kidnapping, the court instructed the jury: "Upon the charge of kidnapping * * * I in-

struct you that, if you find from the evidence beyond a reasonable doubt that this defendant \* \* \* did by the use of force, by the threat of force sufficient to cause the prosecuting witness to leave the place where she had a right to be and was and goes to some other place under the control and direction of the defendant *without any lawful authority,* it would be your duty to find the defendant guilty of kidnapping as charged." (Emphasis added.) While the grammatical structure of this sentence, as it appears in the record, indicates a possible omission or alteration of a word in the transcription, the meaning is clear and it complies with the requirement of the *Witherington* case. In the next sentence the jury was told, "If you fail to so find as to any or all of those facts, it would be your duty to return a verdict of not guilty as to that charge \* \* \*"

The defendant also contends that there was error in denying his motions to quash each of the bills of indictment and in instructing the jury that, upon the charge of rape, they might return a verdict of guilty as charged without adding thereto a recommendation that the defendant be sentenced to imprisonment for life, in which event the death sentence would be imposed.

The indictments were proper in form. The motions to quash were properly denied. The jury having returned a verdict of guilty upon the charge of rape with a recommendation that the sentence be imprisonment for life, which sentence was imposed, we do not in this case reach the question of whether a death sentence could lawfully be imposed under the statutes in effect at the time of this offense and at the time of the trial. A similar question, upon the charge of murder, was considered by us in *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241, and decided adversely to the contention of the defendant here, but it is not before us in the present case. In any event, the conviction and sentence upon the charge of kidnapping would not be affected by the instruction of the court as to the several verdicts which might be rendered by the jury upon the charge of rape.

The defendant's court appointed counsel have with diligence combed the record and have made 51 assignments of error. In view of the serious nature of the offenses charged and the imposition in each case of a sentence to imprisonment for life, we have carefully considered each of these assignments of error, including those abandoned by the failure of the defendant to bring them forward in his brief. We find no error which would justify reversal or modification of the judgment of the court below, either in the kidnapping case or in the rape case.

No error.