IN THE SUPREME COURT OF NORTH CAROLINA

No. 167PA16

Filed 9 June 2017

STATE OF NORTH CAROLINA

v.

WILLIAM EDWARD GODWIN III

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 786 S.E.2d 34 (2016), finding prejudicial error in a judgment entered on 15 November 2013 by Judge Gary M. Gavenus in Superior Court, Mecklenburg County, and ordering that defendant receive a new trial. On 22 September 2016, the Supreme Court allowed defendant's conditional petition for discretionary review as to an additional issue. Heard in the Supreme Court on 22 March 2017.

*Joshua H. Stein, Attorney General, by Kristin J. Uicker, Assistant Attorney General, for the State-appellant/appellee.*

*Rudolf Widenhouse, by M. Gordon Widenhouse, Jr., for defendant-appellant/appellee.*

JACKSON, Justice.

In this appeal we consider whether North Carolina Rule of Evidence 702(a1) requires a law enforcement officer to be recognized explicitly as an expert witness pursuant to Rule 702(a) before he may testify to the results of a Horizontal Gaze Nystagmus (HGN) test. Because we conclude that such explicit recognition is not

required and that the trial court implicitly recognized the law enforcement officer in this case as an expert prior to allowing him to testify as to the issue of defendant's impairment, we reverse that portion of the decision of the Court of Appeals that is inconsistent with this determination. Because we also conclude that the trial court did not err in denying defendant's request for a special jury instruction to explain that results of a chemical breath test are not conclusive evidence of impairment, we affirm that part of the decision of the Court of Appeals holding there was no error in the trial court's decision to deny defendant's request for special jury instructions.

The State's evidence at trial tended to show the following: On the evening of 18 January 2011, Officer Daniel R. Kennerly of the Charlotte-Mecklenburg Police Department initiated a traffic stop of a vehicle once he confirmed by radar that the vehicle was travelling fourteen miles per hour faster than the posted speed limit. The driver of the vehicle, defendant William Edwin Godwin III, subsequently pulled over and stopped his vehicle on the side of the road. After approaching defendant, who was still seated in his vehicle, Officer Kennerly detected an odor of alcohol and observed that defendant's eyes were red and glassy. Officer Kennerly asked defendant from where he had driven and whether he had been drinking. Defendant responded that he was coming from a restaurant and had consumed three beers that evening.

Based on his observations, training, and experience, Officer Kennerly then

requested that defendant exit the vehicle in order to perform three standardized field

sobriety tests: the HGN, the walk-and-turn, and the one-leg stand.  Officer Kennerly

administered the HGN test to defendant twice in order to ascertain whether his eyes

"jerked" during the test, which is an indication of impairment.  After observing four

out of six possible indicators of impairment during the HGN test, Officer Kennerly

determined that defendant might be impaired and proceeded with the remaining two

field sobriety tests.

Officer Kennerly observed two out of four possible indicators of impairment

during the one-leg stand test and six out of eight possible indicators during the walk-

and-turn test.  At the conclusion of the three field sobriety tests, Officer Kennerly

placed defendant under arrest for driving while impaired, transported him to the

police station, and administered a breathalyzer test to defendant.  Defendant's blood

alcohol concentration (BAC) measured at 0.08 grams of alcohol per 210 liters of air.

Defendant was charged with driving while subject to an impairing substance.  After

being convicted in district court, defendant appealed his conviction.  Defendant was

then tried during the 12 November 2013 criminal session of the Superior Court,

Mecklenburg County.

When Officer Kennerly testified at trial regarding his administration of the

HGN test, defendant objected, arguing that pursuant to the 2011 amendment to

North Carolina Rule of Evidence 702(a), the State should not be permitted to present

testimony regarding the HGN test without qualifying the testifying officer as an expert. In response, the State argued that Officer Kennerly did not need to be found explicitly to be an expert because he was merely testifying to the administration of the field sobriety tests and his resulting observations. The State also argued that Officer Kennerly had completed the requisite training to administer field sobriety tests; therefore, he was qualified to testify regarding the subject. At the conclusion of its own voir dire of the officer and a voir dire by both attorneys, the trial court concluded that Officer Kennerly could testify based upon his training and experience, regarding his administration of the three field sobriety tests as well as his observations of defendant during the tests. Officer Kennerly then testified that he had received training as to how to administer the HGN test and how to identify indicators of impairment based upon the test. He also testified that, after administering the three field sobriety tests to defendant, he concluded from his training, experience, and observations that defendant's "mental and physical faculties were appreciably impaired."

At the close of the evidence, defendant proposed two relatively similar jury instructions concerning the results of the breathalyzer test and how the jury should analyze those results. The proposed instructions suggested to the jury that it was not compelled to find defendant's BAC to be 0.08 or more based upon the result of the chemical analysis. In response, the State argued that such an instruction would merely draw attention to the 0.08 BAC and confuse the jury. The State also asserted

that it would be sufficient for the trial court to instruct the jury that it was the sole judge of the weight of the evidence and the credibility of the witnesses. After consideration of the applicable case law and the arguments of counsel, the trial court refused to give defendant's requested jury instructions and gave the pattern jury instructions on credibility and impaired driving.

On 15 November 2013, the jury convicted defendant of driving while impaired. Defendant appealed his conviction to the Court of Appeals, arguing, *inter alia*, that the trial court failed to comply with the standards of Rule 702 in allowing Officer Kennerly's testimony without requiring the State to tender the officer as an expert witness. Defendant also argued that Rule 702(a1) obligated the trial court to find explicitly that Officer Kennerly was qualified to present expert testimony as an expert pursuant to Rule 702(a) before allowing him to testify about the HGN test results. Defendant further maintained that the trial court erred in rejecting his proposed jury instructions. Defendant contended that the proposed instructions were necessary to inform the jury that, although the breathalyzer results were sufficient to support a finding of driving while impaired, they did not compel a finding that defendant was guilty of impaired driving beyond a reasonable doubt.

In response, the State argued before the Court of Appeals that the trial court properly limited Officer Kennerly's testimony to the administration of the field sobriety tests and his observations of defendant during those tests. The State further

contended that if defendant believed that Officer Kennerly was not qualified to testify, it was defendant's responsibility to refute the officer's training and experience. Noting that defendant tendered two experts to counter Officer Kennerly's evidence at trial, the State highlighted that the jury still determined that defendant was guilty. Regarding the trial court's refusal to deliver defendant's proposed jury instructions, the State argued that the requested instructions were given in substance, and that the jury was not misled or misinformed in receiving the pattern instructions.

Concluding that Rule 702(a1) requires that a witness explicitly be found to be an expert before testifying to the results of an HGN test, the Court of Appeals determined that the trial court erred in failing to recognize Officer Kennerly as an expert pursuant to Rule 702(a). *See State v. Godwin*, ___ N.C. App. ___, ___, 786 S.E.2d 34, 37-38 (2016). In reaching its decision, the Court of Appeals relied on *State v. Helms*, in which this Court held that the HGN test "represents specialized knowledge that must be presented to the jury by a qualified expert." *Id.* at ___, 786 S.E.2d at 36 (emphasis omitted) (quoting *State v. Helms*, 348 N.C. 578, 581, 504 S.E.2d 293, 295 (1998)). The Court of Appeals also highlighted potentially conflicting evidence regarding defendant's performance on the other field sobriety tests and concluded that such evidence created "a reasonable possibility" that, "had the HGN test results not been admitted, a different result would have been reached at trial." *Id.* at ___, 786 S.E.2d at 39. Based upon its holding on this issue, the Court of Appeals

awarded defendant a new trial. *Id.* at ___, 786 S.E.2d at 40. As to the jury instructions, the Court of Appeals rejected defendant's argument, noting that the pattern jury instructions given by the trial court "informed the jury, in substance, that it was not compelled to return a guilty verdict based simply on the chemical analysis results." *Id.* at ___, 786 S.E.2d at 39 (quoting *State v. Beck*, 233 N.C. App. 168, 171-72, 756 S.E.2d 80, 83, *disc. rev. denied*, 367 N.C. 508, 759 S.E.2d 94 (2014)).

On appeal to this Court, the State argues that the trial court implicitly found that the witness was qualified as an expert. Therefore, the State contends that the Court of Appeals erred by holding that the expert testimony was erroneously admitted. We agree. On conditional appeal, defendant argues that the Court of Appeals erred in affirming the trial court's refusal to give his requested jury instructions. Defendant contends that without his proposed instructions, the jury would feel compelled to find he was impaired. We disagree. We now address these two issues in turn.

According to Rule 702(a):

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>> (1) The testimony is based upon sufficient facts or data.
>> (2) The testimony is the product of reliable principles and methods.

> (3) The witness has applied the principles and
> methods reliably to the facts of the case.

N.C.G.S. § 8C-1, Rule 702(a) (2015). The three numbered requirements for admission of expert testimony were added to Rule 702(a) by amendment in 2011 to incorporate the standard from the line of United States Supreme Court cases beginning with *Daubert v. Merrell Dow Pharmaceuticals, Inc. See State v. McGrady*, 368 N.C. 880, 884, 888, 787 S.E.2d 1, 5, 7-8 (2016). Also relevant to the subject matter of this case, Rule 702(a1) provides, in relevant part:

> A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
> (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administrated by a person who has successfully completed training in HGN.

N.C.G.S. § 8C-1, Rule 702(a1) (2015). Reading these subsections together, it is evident that the General Assembly envisioned the precise scenario we address today and made clear provision to allow testimony from an individual "who has successfully completed training in HGN" and meets the criteria set forth in Rule 702(a), as Officer Kennerly has done. *Id.* § 8C-1, Rule 702(a1)(1).

In assessing how a witness may be qualified as an expert, we have held that when the record contains sufficient evidence upon which the trial court could have based an explicit finding that the witness was an expert, an appellate court may conclude that the trial court found the witness to be an expert. *Apex Tire & Rubber*

*Co. v. Merritt Tire Co.*, 270 N.C. 50, 53, 153 S.E.2d 737, 739 (1967). In *Apex Tire* the trial court explicitly denied counsel's motion to declare a witness was an expert. *Id.* at 54, 153 S.E.2d at 740. The trial court then permitted the witness to testify in detail, as well as offer an opinion in the case. *Id.* at 54, 153 S.E.2d at 740. We concluded that, notwithstanding the trial court's denial of the motion to recognize explicitly the witness as an expert, the record contained evidence on which the trial court could have based a finding that the witness was an expert. *Id.* at 54, 153 S.E.2d at 740. Accordingly, we inferred from its actions that the trial court made an implicit finding that the witness was an expert. *Id.* at 53-54, 153 S.E.2d at 739-40.

Since our decision in *Apex Tire*, we have reiterated the concept of implicit recognition of expert witnesses in several opinions. We have held:

> In the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show an express finding on this matter, the finding, one way or the other, being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness.

*State v. Perry*, 275 N.C. 565, 572, 169 S.E.2d 839, 844 (1969) (citations omitted). Similarly, we have held that a trial judge implicitly recognized a witness as an expert by overruling defense counsel's objection to the witness's qualifications. *State v. Bullard*, 312 N.C. 129, 143-44, 322 S.E.2d 370, 378 (1984) (citing *Perry*, 275 N.C. 565, 169 S.E.2d 839). In addition, we have determined that when a defendant interposed only general objections to trial testimony and never requested a finding by the trial

court as to the witnesses' qualifications as experts, the recognition that the witnesses were qualified to testify as experts was "implicit in the trial court's ruling admitting the opinion testimony." *State v. Aguallo*, 322 N.C. 818, 821, 370 S.E.2d 676, 677 (1988) (citing *State v. Phifer*, 290 N.C. 203, 213-14, 225 S.E.2d 786, 793 (1976), *cert. denied*, 429 U.S. 1123 (1977)). More recently, we ruled that a "trial court's overruling of defense counsel's objection to the opinion testimony constituted an implicit finding that the witness was an expert." *State v. Wise*, 326 N.C. 421, 430, 390 S.E.2d 142, 148 (citing *Bullard*, 312 N.C. 129, 322 S.E.2d 370), *cert. denied*, 498 U.S. 853 (1990).

Although we decided the aforementioned cases prior to the amendment to Rule 702, the 2011 amendment did not categorically overrule all North Carolina judicial precedents interpreting that rule. *See McGrady*, 368 N.C. at 888, 787 S.E.2d at 8 ("Our previous cases are still good law if they do not conflict with the *Daubert* standard."). Relevant to the issue in this case, the 2011 amendment did not change the basic structure for a trial court's exercise of its gatekeeping function over expert testimony. *See id.* at 892, 787 S.E.2d at 10. Moreover, our precedents continue to dictate that a trial court's ruling on the admissibility of expert testimony "will not be reversed on appeal absent a showing of abuse of discretion." *See id.* at 893, 787 S.E.2d at 11 (quoting *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004), *superseded by statute*, Act of June 17, 2011, ch. 283, sec. 1.3, 2011 N.C. Sess. Laws 1048, 1049 (codified at N.C.G.S. § 8C-1, Rule 702(a)(1)-(3)), *as stated in*

*McGrady*, 368 N.C. at 888, 787 S.E.2d at 8).  Here we can detect no such abuse of discretion by the trial court.

During both the pretrial hearing and the trial in this case, Officer Kennerly was "qualified as an expert by knowledge, skill, experience, training, or education." N.C.G.S. § 8C-1, Rule 702(a).  Officer Kennerly testified that he had completed training on how to administer the HGN test and other standardized field sobriety tests that he administered to defendant.  During direct examination, Officer Kennerly explained that he attended a thirty-four hour course in standardized field sobriety testing and DWI detection in 2006.  Officer Kennerly's certificate of completion for this course was admitted into evidence.  He also testified that he attended an eight hour refresher course in 2009.  Both courses were approved by the National Highway Traffic Safety Administration (NHTSA).  Prior to the date he administered the HGN test to defendant, Officer Kennerly had conducted approximately three hundred impaired driving offense investigations.

The trial court also established that Officer Kennerly's testimony met the three-pronged test of reliability pursuant to the amended rule.  The trial court conducted its own voir dire of Officer Kennerly, which elicited testimony that the HGN test he administered to defendant on the day in question was given in accordance with the standards set by the NHTSA, and that those standards were derived from the results of a specific scientific study.  Additionally, the trial court's

voir dire confirmed that the principles and methods utilized in the HGN test were found to be reliable indicators of impairment, and that Officer Kennerly applied those principles and methods to defendant in this case.

Defendant objected to Officer Kennerly's testimony on the grounds that he was neither formally tendered as an expert witness by the State nor recognized as such by the trial court. Yet we note that defendant did not object to any of Officer Kennerly's actual qualifications, even clarifying his general objection by stating, "I'm not saying Officer Kennerly could not be qualified, but I think the State's going to have to go through that." Defendant eventually narrowed his objection by acknowledging that if the State were to limit the officer's testimony to his observations and the indications of impairment, then defendant had "less problem with it." The trial court then overruled defendant's objection; however, as the colloquy between the trial court and the defense attorney indicates, Officer Kennerly *only* was permitted to offer testimony regarding his *observations* of defendant's impairment as he administered the HGN test and was not permitted to comment on the HGN test's *reliability*. These distinctions are critical.

> TRIAL COURT: . . . I will allow this officer to testify that he administered the HGN test, the walk-and-turn test, and the one-legged test. He will be allowed to testify as to the indicators of impairment he observed of this defendant in giving these tests.
>
> Anything else?

> DEFENSE COUNSEL: I'd ask the Court to note my exception. Is the Court disqualifying him as an expert on the HGN?
>
> TRIAL COURT: I'm not -- he doesn't have to be qualified as an expert. I'm not going to make that requirement. I'm just going to let him testify based on his training and experience, what -- how the HGN should be administered and what the indicators are and what indicators he observed.

In overruling defendant's objection, the trial court implicitly found that Officer Kennerly was qualified to testify as an expert, and as such, in accordance with the guidance in Rule 702(a1), Officer Kennerly could "give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level." N.C.G.S. § 8C-1, Rule 702(a1).

Although the Court of Appeals relied on our prior decision in *Helms* to reach its conclusion that the expert testimony was erroneously admitted, several important facts render *Helms* distinguishable from the present case. At issue in *Helms* was the *reliability* of the HGN test, not the *observed impairment* of the individual being subjected to the HGN test. *Helms*, 348 N.C. at 582, 504 S.E.2d at 295. Furthermore, although the officer in *Helms* testified that he had taken a forty hour training course in the use of the HGN test, the State presented no evidence regarding—and the court conducted no inquiry into—the reliability of the HGN test. *Id.* at 582, 504 S.E.2d at 295. We also noted in *Helms* that nothing in the record of the case indicated that the trial court took judicial notice of the reliability of the HGN test. *Id.* at 582, 504 S.E.2d

at 295. Accordingly, we concluded that because no sufficient scientifically reliable evidence existed as precedent to show the correlation between intoxication and nystagmus, "it [was] improper to permit a lay person to testify as to the meaning of HGN test results." *Id.* at 582, 504 S.E.2d at 295. Additionally, the trial court permitted the law enforcement officer to testify as a lay person regarding the meaning of HGN test results, and there was no evidence in the record to support a finding that the trial court had implicitly found the officer to be an expert. *Id.* at 582, 504 S.E.2d at 295. This scenario plainly contrasts with the present case in which the trial court made a finding of reliability of the HGN test and an implicit finding that Officer Kennerly was qualified as an expert. Furthermore, with the 2006 amendment to Rule 702, our General Assembly clearly signaled that the results of the HGN test are sufficiently reliable to be admitted into the courts of this State. *See* The Motor Vehicle Driver Protection Act of 2006, ch. 253, sec. 6, 2005 N.C. Sess. Laws (Reg. Sess. 2006) 1178, 1183 (codified at N.C.G.S. § 8C-1, Rule 702(a1) (Supp. 2006)). Based on these distinguishing factors, our decision in *Helms* is not dispositive of the present case.

Notwithstanding our decision in this case, the better practice would have been for the trial court to refrain from stating, "[Officer Kennerly] doesn't have to be qualified as an expert. I'm not going to make that requirement." Furthermore, in light of the aforementioned findings regarding Officer Kennerly's knowledge, skill, experience, and training, the appellate division's ability to review the trial court's oral order would have benefited from the inclusion of additional facts supporting its

determination that Officer Kennerly was qualified to testify as an expert regarding his observations of defendant's performance during the HGN test.

Next, we turn to the issue of defendant's proposed jury instructions. When a defendant requests a special jury instruction that is correct in law and supported by the evidence, the court must give the instruction in substance. *State v. Monk*, 291 N.C. 37, 54, 229 S.E.2d 163, 174 (1976) (citation omitted). Yet, "[e]ven if a defendant is entitled to requested instructions, the court is not required to give them verbatim. It is sufficient if they are given in substance." *State v. Howard*, 274 N.C. 186, 199, 162 S.E.2d 495, 504 (1968) (citation omitted). If "[t]he instructions given by the trial court adequately convey[ ] the substance of defendant's proper request[,] no further instructions [are] necessary." *State v. Green*, 305 N.C. 463, 477, 290 S.E.2d 625, 633 (1982) (citation omitted).

Here one of defendant's two proposed instructions stated:

> A chemical analysis of defendant's breath obtained from an EC/IR-II which shows an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath is deemed sufficient to prove defendant's alcohol concentration. However, such chemical analysis does not compel you to so find beyond a reasonable doubt. You are still at liberty to consider the credibility and/or weight to give such chemical analysis when considering whether defendant's guilt has been proven beyond a reasonable doubt.

Though worded slightly differently, the second proposed instruction also suggested to the jury that it was not compelled to find defendant's alcohol concentration to be 0.08 or more based on the result of the chemical analysis.[1]

Defendant asserted at trial that without either of the requested instructions, the jury would be required to presume that the reading of 0.08 was conclusive proof of impairment. Defendant argued that the purpose of his proposed instructions was to ensure that the jury realized it could consider the evidence presented by defendant of his lack of impairment, notwithstanding the evidence provided by the chemical analysis. Following the pattern jury instruction on impaired driving, the trial court explained to the jury that impairment could be proved by an alcohol concentration of 0.08 or more, and that this chemical analysis was "deemed sufficient evidence to prove a person's alcohol concentration." The trial court also explained to the jurors that they were "the sole judges of the credibility of each witness and the weight to be given to the testimony of each witness," and that if they decided that certain evidence was believable, they "must then determine the importance of that evidence in light of

---

[1] In its entirety the second proposed instruction stated:

> The results of the chemical analysis of the Defendant's breath do not create a presumption that the Defendant had, at a relevant time after driving, an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath. You may find the Defendant's alcohol concentration to be 0.08 or more. You may find the Defendant's alcohol concentration to be 0.08 or more based upon the result, but you are not compelled to do so.

all other believable evidence in the case." These statements signaled to the jury that it was free to analyze and weigh the effect of the breathalyzer evidence along with all the evidence presented during the trial. Therefore, we hold that the standard jury instruction on credibility was sufficient in this case and that the trial court adequately conveyed the substance of defendant's requested instructions to the jury. Accordingly, we affirm the holding of the Court of Appeals that the jury instructions were proper.

For the reasons stated above, we also hold that the trial court implicitly found that Officer Kennerly was qualified to give expert testimony, and therefore did not abuse its discretion by allowing Officer Kennerly to testify as an expert regarding defendant's impairment. The trial court overruled defendant's objection to Officer Kennerly's testimony, determined that his testimony was relevant and reliable, and ascertained that he was qualified to testify as an expert. Consequently, we conclude that the Court of Appeals erroneously determined that the trial court did not find Officer Kennerly to be an expert pursuant to Rule 702(a).

Accordingly, as explained above, we hold that the trial court made no error in the trial of defendant's case. Therefore, we reverse the decision of the Court of Appeals awarding defendant a new trial and instruct that court to reinstate the trial court's judgment.

AFFIRMED IN PART; REVERSED IN PART.