STROUD, Judge.
 

 *685
 
 Defendant appeals the order denying her motion to suppress based upon her contention that the evidence obtained from the stop of her vehicle should have been suppressed because the deputy lacked reasonable suspicion for the traffic stop and the judgment convicting her of driving while impaired ("DWI") because the trooper involved should not have been allowed to testify on the results of the horizontal gaze nystagmus test ("HGN test") because the State did not formally tender him as an expert witness. We affirm the order and determine there was no error as to the judgment.
 

 I. Background
 

 In January of 2014, a citation was issued against defendant for operating a vehicle while impaired. The case made its way through district court, and in September of 2017 defendant filed a motion in superior court
 

 for an order suppressing and excluding the evidence seized ... for the reason that ...
 

 *156
 
 Deputy Thomas Sewell of the Johnston County Sheriff's Department and Trooper M.D. Williams of the State Highway Patrol stopped the defendant in her motor vehicle on January 25, 2014 without reasonable suspicion that defendant had violated a criminal or traffic offense[.]
 

 Defendant sought to suppress the evidence resulting from the stop of her vehicle, including various field sobriety tests. In February of 2016, the trial court denied defendant's motion to suppress. Ultimately, defendant's case went to trial, and the jury convicted her of driving while impaired. The trial court entered judgment, and defendant appeals both the order denying her motion to suppress and the judgment.
 

 II. Motion to Suppress
 

 Defendant first argues that the trial court committed plain error by denying her motion to suppress. Defendant admits that she failed to properly preserve her appeal of her motion to suppress because she failed to object when the evidence was introduced. To be clear, defendant is actually challenging the denial of her motion to suppress as plain error and is
 
 not
 
 challenging the evidence admitted at trial because of the denial. Our Court recently addressed a case in the same posture:
 

 Here, defendant filed a pretrial motion to suppress evidence of his arrest alleging that there was not sufficient evidence to establish probable cause for his arrest. That motion was decided after an evidentiary hearing and denied. Thereafter, the record is silent as to any further
 
 *686
 
 objection from defendant to the introduction of the same evidence at the trial of this case. Therefore, defendant has waived any objection to the denial of his motion to suppress, and it is not properly preserved for this Court's review. Defendant, however, attempts to cure this defect by arguing that the trial court committed plain error instead.
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 The North Carolina Supreme Court has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of the evidence. Under the plain error rule, defendant must establish that a fundamental error occurred at trial and that absent the error, it is probable the jury would have returned a different verdict.
 

 Our review of a trial court's denial of a motion to suppress is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are exclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law. The trial court's conclusions of law are fully reviewable on appeal.
 

 State v. Williams
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 419
 
 , 424-25 (2016) (citations quotation marks, and ellipses omitted). Ultimately, this Court concluded that the trial court did not commit plain error in denying the motion to suppress without considering the evidence actually presented at trial because the only issue on appeal was whether the trial court had plainly erred in denying the motion to dismiss to suppress.
 
 See
 

 id.
 

 at ----,
 
 786 S.E.2d at 425
 
 .
 

 The unchallenged and binding findings of fact,
 
 see
 

 id.
 

 , establish:
 

 1. On 24 January 2014, at approximately 1:00 AM, Deputy Thomas Sewell of the Johnston County Sheriff's Office was in uniform and on duty in Johnston County, North Carolina.
 

 *687
 
 2. The time was very late at night, sometime after midnight.
 

 3. The temperature was approximately twelve (12) degrees Fahrenheit with a negative wind chill.
 

 4. Deputy Sewell was on patrol in the area of Don Lee's Store, a gas station and convenience store located on North Carolina Highway 50 in Johnston County, North Carolina.
 

 *157
 
 5. Deputy Sewell was familiar with this area because it was his regular, assigned patrol district.
 

 6. Deputy Sewell knew that Don Lee's Store was closed because he had patrolled the area several times prior to this occasion.
 

 7. There is an automobile repair shop across the road from Don Lee's Store.
 

 8. There are several residential homes in the area of Don Lee's Store.
 

 9. Deputy Sewell had performed several business checks in the area including business checks at both Don Lee's Store and the automobile repair shop across the road from Don Lee's Store.
 

 10. Deputy Sewell had personal knowledge of several break-ins that had occurred at Don Lee's Store prior to 24 January 2014.
 

 11. Deputy Sewell recalled that the area surrounding Don Lee's Store was a "decently high break-in area."
 

 12. While on routine patrol, Deputy Sewell saw the Defendant's vehicle close to the gasoline pumps in the parking lot of Don Lee's Store.
 

 13. The Defendant's vehicle was the only vehicle in the parking lot at that time.
 

 14. Deputy Sewell observed that the Defendant's vehicle's engine was running and that its headlights were on.
 

 ....
 

 *688
 
 16. When Deputy Sewell drove into the parking lot, he positioned his patrol vehicle directly behind the Defendant's vehicle.
 

 17. The Defendant's vehicle attempted to leave the scene immediately upon Deputy Sewell's arrival.
 

 18. When Deputy Sewell saw the Defendant's vehicle drive away, he immediately became concerned and felt that something must be wrong.
 

 19. As soon as the vehicle began to move, Deputy Sewell activated his emergency vehicle lighting.
 

 20. The vehicle traveled approximately ten to fifteen feet before it stopped.
 

 21. The Defendant did not exit her vehicle at any time and the Defendant committed no traffic or equipment violations prior to Deputy Sewell initiating the stop.
 

 22. When Deputy Sewell drove into the parking lot of Don Lee's Store, he had no intentions of turning on his emergency vehicle lighting; his only intent was to perform a welfare check on the Defendant's vehicle.
 

 23. When Deputy Sewell drove up behind the Defendant's vehicle, he intended to get out [of] his patrol vehicle, walk to the driver's side window of the vehicle, check on the occupant(s) and ensure each was in good health, verify there were no mechanical problems with the vehicle, and then continue on with his regularly assigned patrol duties for that night.
 

 24. Deputy Sewell did not think about turning on his emergency vehicle lighting until the moment that the Defendant's vehicle began to drive away.
 

 Based upon the binding findings of fact the trial court concluded:
 

 2. The facts of this case and the evidence presented by the State of North Carolina at this hearing are sufficient to establish a reasonable articulable suspicion to justify the investigative traffic stop of the Defendant's vehicle for Driving While Impaired.
 

 3. The investigative traffic stop of the Defendant's vehicle for Driving While Impaired did not constitute any
 
 *689
 
 violation of the Defendant's Constitutional or statutory rights.
 

 4. Under the totality of the circumstances, including the time of day, Deputy Sewell's personal knowledge concerning break-ins at Don Lee's Store, the automobile repair shop across the road from Don Lee's Store, the residential homes in the area (Deputy Sewell's regular patrol district), the manner in which the Defendant's vehicle was stopped (immediately adjacent to and parallel to the highway so that traffic on the highway would have been visible to occupants of
 
 *158
 
 the vehicle), and the fact that the Defendant's vehicle attempted to leave the scene immediately upon Deputy Sewell's arrival, Deputy Sewell had a reasonable and articulable suspicion to stop the Defendant's vehicle.
 

 Defendant contends these conclusions of law are not supported by the evidence because the trial court's "findings of fact are insufficient to give rise to anything more than a generalized, inchoate and unparticularized suspicion or hunch that there was" criminal activity. Defendant heavily relies on the finding that the deputy's "only intent was to perform a welfare check on the Defendant's vehicle[,]" and the only reason he actually stopped her vehicle was because she pulled away when he approached which is not enough to validate the stop. While defendant's argument makes logical sense, it simply does not reflect the law as it exists: "[T]he Fourth Amendment does not include a consideration of the officer's subjective intent, and his motive will not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."
 
 State v. Icard
 
 ,
 
 363 N.C. 303
 
 , 318,
 
 677 S.E.2d 822
 
 , 832 (2009) (citations and quotation marks omitted);
 
 see also
 

 State v. Johnson
 
 , --- N.C. App. ----,
 
 783 S.E.2d 753
 
 (2016) ("[I]f sufficient objective evidence exists to demonstrate reasonable suspicion, a
 
 Terry
 
 stop is justified regardless of a police officer's subjective intent." (citation and quotation marks omitted)).
 

 Our Supreme Court has stated,
 

 Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Only some minimal level of objective justification is required. This Court has determined that the reasonable suspicion standard requires that the stop be based on specific and articulable
 
 *690
 
 facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, a court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion exists.
 

 State v. Barnard
 
 ,
 
 362 N.C. 244
 
 , 247,
 
 658 S.E.2d 643
 
 , 645 (2008) (citations, quotation marks, brackets, and ellipses omitted). The objective "totality of the circumstances" showed: (1) it was very late at night; (2) defendant's vehicle was idling in front of a closed business; (3) the business and surrounding properties had experienced several break-ins; and (4) defendant pulled away when the deputy approached her car.
 

 Id.
 

 Thus, the evidence together provides an "objective justification" for stopping defendant.
 
 See
 
 id.
 

 Therefore, the trial court did not err in denying defendant's motion to suppress.
 

 III. Testimony on HGN Test
 

 Defendant next argues that the trial court committed plain error by allowing the trooper to testify at trial about the HGN test he administered on defendant during the stop. Specifically, defendant argues that the State never formally tendered the trooper as an expert witness under Rule 702 of the North Carolina Rules of Evidence. Again, defendant requests this Court to review for plain error because she failed to preserve the issue for appellate review by objecting to the results of the HGN test at trial.
 

 Rule 702(a1) includes specific provisions for expert witnesses who testify regarding results of HGN tests:
 

 A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
 

 (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.
 

 North Carolina General Statute § 8C-1, Rule 702(a1) (2013).
 

 During the pendency of this appeal, our Supreme Court addressed the specific issue before us: "In this appeal we consider whether North Carolina Rule of Evidence 702(a1) requires a law enforcement officer
 
 *691
 
 to be recognized explicitly as an expert witness pursuant to Rule 702(a) before he may testify to the results of a Horizontal Gaze Nystagmus
 
 *159
 
 (HGN) test."
 
 State v. Godwin
 
 ,
 
 369 N.C. 604
 
 , 605,
 
 800 S.E.2d 47
 
 , 48 (2017). The Supreme Court ultimately reversed this Court's decision in
 
 Godwin
 
 , which defendant had relied upon here, to conclude that a law enforcement officer need not explicitly be tendered under Rule 702 to testify to the results of a HGN test.
 
 See
 

 id.
 
 at 615,
 
 800 S.E.2d at 54
 
 . The Court in
 
 Godwin
 
 reasoned that because the officer had been tendered as an expert regarding his law enforcement knowledge, testified he had completed training on how to administer the HGN test and other follow-up courses, had experience with impaired driving investigations, was found to be reliable upon the trial court's
 
 voir dire
 
 ,
 
 and
 
 the defendant's only contention was not that the officer was unqualified to testify as an expert regarding HGN testing but merely that he had to formally be tendered as an expert, the State was correct in asserting that the officer had been implicitly recognized as an expert witness in HGN testing and did not need to be formally tendered as such.
 
 See
 

 id.
 
 at 608-614,
 
 800 S.E.2d at 50-53
 
 . This case is controlled by
 
 Godwin
 

 . Compare
 

 id.
 

 ,
 
 369 N.C. 604
 
 ,
 
 800 S.E.2d 47
 
 .
 

 Here, Trooper Williams testified that he had been a trooper with the North Carolina State Highway Patrol since 2004 and that he had training in field sobriety testing, including the HGN test. Trooper Williams specifically testified about his training and qualifications to administer the HGN test, including refresher courses in standardized field sobriety testing every year. Over his career, Trooper Williams had participated in hundreds of DWI investigations. During
 
 voir dire
 
 , defendant's counsel agreed "[t]he evidence rule says that he can certainly talk about the HGN if he has been trained in HGN, but I'm-my objection is that this-the trooper's not qualified to testify about the medical effect of pupil dilation or the medical effect of these drugs."
 
 [1]
 
 This portion of the transcript along with defendant's brief parallels
 
 Godwin
 
 , since the defendant was not arguing the officer was not qualified to testify as an HGN testing expert, but only that he had to be formally tendered as such.
 
 See
 

 id
 
 . at 614,
 
 800 S.E.2d at 52
 
 . Defendant does not argue that Trooper Williams was not properly trained and qualified to testify regarding HGN testing, and the evidence shows he "ha[d] successfully completed training in HGN." N.C. Gen. Stat. § 8C-1, Rule 702(a1). Under
 
 Godwin
 
 , it was simply unnecessary for the State to make a formal tender of the trooper as
 
 *692
 
 an expert on HGN testing, and the trial court committed no error, much less plain error, in allowing the testimony.
 
 See
 
 id.
 

 IV. Conclusion
 

 We conclude defendant received a fair trial, free from reversible error.
 

 AFFIRM AND NO ERROR.
 

 Judge DILLON concurs.
 

 Judge MURPHY concurs in result only.
 

 [1]
 

 Based upon the
 
 voir dire
 
 , the trial court sustained defendant's objection to Trooper Williams's testimony regarding defendant's possible impairment by drugs other than alcohol.