IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-28

No. 133PA21

Filed 11 March 2022

STATE OF NORTH CAROLINA

v.

MATTHEW BENNER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 276 N.C. App. 275 (2021), affirming judgments entered on 22 October 2018 by Judge Kevin M. Bridges in Superior Court, Davidson County. Heard in the Supreme Court on 8 November 2021.

*Joshua H. Stein, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellee.*

*M. Gordon Widenhouse, Jr., for defendant-appellant.*

ERVIN, Justice.

¶ 1   The issue before the Court in this case is whether the trial court completely and accurately instructed the jury concerning the extent to which defendant was entitled to exercise the right of self-defense at his trial for first-degree murder. In seeking relief before this Court, defendant contends that the trial court erred by (1) rejecting his request that the jury be instructed in accordance with N.C.P.I. – Crim. 308.10 and (2) failing to instruct the jury that defendant was "presumed to have held

a reasonable fear of imminent death or serious bodily harm to himself" in light of the fact that defendant had been attacked in his own home. After careful consideration of defendant's challenges to the trial court's judgments in light of the applicable law, we affirm the decision of the Court of Appeals.

## I. Factual Background

### A. Substantive Facts

In January 2017, Samantha Wofford lived in a single-wide mobile home in Davidson County with her mother and fiancé, Russell Gwyn. Defendant resided in an adjacent mobile home, which featured a small deck from which a flight of steps led from the front door to the yard. On the evening of 6 January 2017, when it was snowing, Ms. Wofford and Mr. Gwyn were walking their two dogs when Ms. Wofford noticed an unfamiliar car parked outside defendant's mobile home. At approximately 10:00 p.m., Ms. Wofford reentered her residence with one of the dogs while Mr. Gwyn remained outside with the other.

As Mr. Gwyn walked from the back yard around the side of his residence, he heard loud bickering coming from defendant's mobile home and decided that it was time for him to go back inside. As he walked toward the front steps of his residence, Mr. Gwyn heard a gunshot, at which point he turned and saw a man fall backward from the bottom of the steps leading to defendant's mobile home before hitting the ground. At that point, Mr. Gwyn reentered his own mobile home and told Ms. Wofford

to "[c]all 911. Somebody's been shot." After opening the front door and seeing a man lying in the front yard while defendant, who was holding a firearm, looked on, Ms. Wofford returned to her residence and called for emergency assistance.

¶ 4      At the time that Deputy Sheriffs Benjamin Schlemmer and Matthew Higgins of the Davidson County Sheriff's Office arrived at the scene, they observed a white male, who was later determined to be Damon Dry, lying on his back at the bottom of the flight of steps leading to defendant's mobile home. As they cautiously approached defendant's residence, Deputy Higgins struck the side of the structure with his flashlight and ordered any occupants to come outside. As he did so, Deputy Higgins heard loud noises emanating from the interior of the mobile home and noted that the steps leading into that structure were covered with blood and snow.

¶ 5      After Deputy Higgins had ordered the occupants of the mobile home to come outside approximately five times, defendant emerged from the front door with his hands in the air and walked down the steps. At that point, Deputy Higgins handcuffed defendant, walked defendant to his patrol vehicle, and secured defendant in the rear seat. As he did so, Deputy Higgins smelled the odor of alcohol on defendant's breath and observed that defendant had blood on his face, arms, and hands and had blood stains on the sweatpants that he was wearing.

¶ 6      Once defendant had been placed in Deputy Higgins' patrol vehicle, Deputies Schlemmer and Higgins conducted a security sweep of defendant's residence. In the

course of determining that defendant's mobile home was unoccupied, the deputies discovered the presence of blood on the front door frame and the screen door. After surveying defendant's residence, Deputy Schlemmer began a crime scene log and secured the premises with security tape, while Deputy Higgins checked on Mr. Dry, who was not breathing, had fixed eyes, and was surrounded with blood and wearing a t-shirt that appeared to be stippled with shotgun pellets. A subsequent autopsy confirmed that Mr. Dry had died from gunshot wounds to the chest.

¶ 7 As the deputies took turns sitting in Deputy Higgins' patrol vehicle with defendant for the purpose of keeping warm, defendant began behaving in an erratic manner, becoming angry and kicking the patrol vehicle's window. In an effort to stop defendant from engaging in this sort of conduct, Deputy Schlemmer, with the assistance of Sergeant Christopher Stilwell, the supervisor of the patrol unit to which Deputies Schlemmer and Higgins belonged, opened the door of the compartment in which defendant was seated. As he did so, defendant said "You know I shot him. Take me to jail. Take these cuffs off me. Put them up front."

¶ 8 At a later time, investigating officers removed defendant from the patrol vehicle while Deputy Matthew Riddle of the Davidson County Sheriff's Office swabbed defendant's hands for the purpose of determining whether gunshot residue was present. Although defendant was calm and compliant when this process began, he soon became agitated and belligerent, stating that he did not "know why we're

doing this" since "I shot the m- - - - f - - - -." After swabbing defendant's hands, Deputy Riddle completed the necessary information sheet and secured the swabbings in his vehicle while defendant continued to scream and yell, "I shot the m- - - - - f- - - - -."

¶ 9        Once they had obtained the issuance of a search warrant authorizing them to enter the residence, investigating officers examined the interior of defendant's mobile home more thoroughly and observed the presence of blood on the steps, the railing, the ground in front of the steps, the screen door, and a stack of newspapers located just inside the front door. In addition, the investigating officers located a silver .38 caliber revolver that contained two spent shells and four live rounds in the kitchen sink, a second revolver in the master bedroom, and a third handgun and six long guns in a gun safe that was situated in the closet of a workout room at the far end of the mobile home.

¶ 10        At trial, defendant testified that he and his friend, William Tuller, had met Mr. Dry several years earlier and that they had discovered that all three of them shared a mutual interest in firearms. As a result, defendant had visited in Mr. Dry's home on several occasions for the purpose of examining Mr. Dry's rifle collection and had shown Mr. Dry how to properly load and shoot these weapons. Eventually, however, defendant lost contact with Mr. Tuller and claimed that he had not been in the physical presence of either Mr. Tuller or Mr. Dry for approximately five years prior to 6 January 2017, although he admitted that he had spoken with Mr. Dry, who

had called to inquire if defendant's employer was hiring additional workers, approximately a year and half prior to the date of the shooting.

¶ 11 Defendant testified that he had left work just before noon on 6 January 2017, had completed several errands, and had purchased a bottle of vodka before returning home. After spreading newspapers on the floor adjacent to his front door to prevent the introduction of snow into his residence and sweeping off his front deck, defendant entered the kitchen and poured himself a drink. At approximately 8:00 p.m., defendant answered a knock on his front door and discovered that Mr. Dry had arrived. Although defendant claimed to have been surprised by Mr. Dry's visit given the lengthy period of time that had elapsed since they had last seen each other, defendant invited Mr. Dry to come in for a drink. According to defendant, Mr. Dry claimed that he had recently lost his job and wanted to know whether defendant's employer had any openings. After defendant told Mr. Dry that his employer did not have any vacant positions at that time, the two men continued to converse and walked around defendant's mobile home, during which time defendant pointed out the workbench at which he built items for his home and reloaded ammunition for his firearms.

¶ 12 At approximately 9:30 p.m., after the two men had had a second drink, defendant "started dropping hints" that Mr. Dry should leave in light of the fact that defendant had not showered since getting off work. Although Mr. Dry repeated his

earlier question about the possibility that he might find work with defendant's employer, defendant reiterated that there were no open positions at his place of work. Shortly before 10:00 p.m., defendant took Mr. Dry's cup, placed it in the kitchen sink, and told Mr. Dry that "[i]t's time to leave," at which point Mr. Dry "got kind of a wild eyed look on his face"; said "[m]an, I really need a job. I need a job. I need money"; and grabbed defendant's shirt before pushing defendant back against the sink. In response, defendant shoved Mr. Dry, opened the front door, and ordered Mr. Dry to leave. As Mr. Dry rushed at defendant and pushed defendant against the door jamb, he said, "I'm not leaving" and "I need money."

¶ 13    At some point during this altercation, defendant escaped to his bedroom, where he retrieved a revolver from his nightstand before returning to the living room, pointing the gun at Mr. Dry, and threatening to shoot Mr. Dry if he did not leave. After defendant made these comments, Mr. Dry stated that he was going to kill defendant and started moving toward him. As Mr. Dry was about to reach him, defendant fired two shots into Mr. Dry's chest, causing Mr. Dry to stand up and walk out the front door.

¶ 14    Upon making his way to the front door, defendant saw Mr. Dry, who appeared to be dead, lying on the ground outside. Although defendant went down the steps for the purpose of checking on Mr. Dry, he was unable to detect a pulse upon examining Mr. Dry's body. At that point, defendant washed his hands in the sink and called his

mother, who told him to seek emergency assistance and to wait for law enforcement officers and other emergency personnel to arrive. In spite of the fact that defendant did not recall having heard anyone knocking on the exterior of his mobile home, he stepped outside and surrendered when he observed shadows moving around in the yard.

**B. Procedural History**

¶ 15        On 13 March 2017, the Davidson County grand jury returned bills of indictment charging defendant with first-degree murder and possession of a firearm by a felon. The charges against defendant came on for trial before the trial court and a jury at the 10 October 2018 session of Superior Court, Davidson County. At trial, the State elicited evidence tending to show that defendant had been previously convicted of breaking or entering a motor vehicle in Guilford County. Although defendant did not deny the existence of this previous felony conviction or that he had kept firearms in his residence, he claimed to have been unaware that it was unlawful for him to possess a firearm given his belief that he "had all [his] rights restored to [him] over 20 years ago, including the right to keep and bear arms."

¶ 16        At the jury instruction conference, the trial court proposed, with the concurrence of the prosecutor, to instruct the jury in accordance with N.C.P.I. – Crim. 206.10, which encompasses the law of first-degree murder involving the use of a deadly weapon and the effect of a defendant's claim to have exercised the right of self-

defense.  N.C.P.I. – Crim. 206.10.  Although defendant requested the trial court to instruct the jury in accordance with N.C.P.I. – Crim. 308.10, which informs the jury that a defendant who is situated in his own home and is not the initial aggressor can "stand the defendant's ground and repel force with force regardless of the character of the assault being made upon the defendant," the State objected to defendant's request on the grounds that, while N.C.P.I. – Crim. 308.10 reflected the provisions of N.C.G.S. §§ 14-51.2 and 14-51.3, which provide for a statutory right of self-defense, the justification described in those provisions is not available to a person who "[w]as attempting to commit, committing, or escaping after the commission of a felony." N.C.G.S. § 14-51.4(1).  According to the State, since "defendant was in the commission of and was continually committing the felony of possession of a firearm by a felon," the "plain language" of N.C.G.S. § 14-51.4(1) deprived him of his statutory right of self-defense.  After arguing that the limitation upon the right of self-defense upon which the State relied should not apply given the absence of any "causal connection" between defendant's possession of a firearm and his need to use that firearm in self-defense, defendant acknowledged that the Court of Appeals had rejected a similar argument in *State v. Crump*, 259 N.C. App. 144, 150 (2018), *overruled by State v. McLymore*, 2022-NCSC-12, while contending that the relevant portion of *Crump* was dicta and that adhering to the interpretation adopted in *Crump* would create the "absurd result" that a defendant attacked in his own home would be prohibited from

defending himself based solely upon his status as a convicted felon.[1] At the conclusion

of the jury instruction conference, the trial court declined to instruct the jury in

accordance with N.C.P.I. – Crim. 308.10 on the grounds that a contrary action would

require it to ignore the plain language of N.C.G.S. § 14-51.4.

¶ 17        On 19 October 2018, the jury returned a verdict finding defendant guilty of

possession of a firearm by a felon.  On 22 October 2018, the jury returned a verdict

convicting defendant of first-degree murder.  After accepting the jury's verdicts, the

trial court entered judgments sentencing defendant to a term of life imprisonment

without the possibility of parole based upon his conviction for first-degree murder and

to a concurrent term of fourteen to twenty-six months imprisonment based upon his

conviction for possession of a firearm by a felon.  Defendant noted an appeal to the

Court of Appeals from the trial court's judgments.

## C.  Court of Appeals Decision

¶ 18        In seeking relief from the trial court's judgments before the Court of Appeals,

defendant argued that the trial court had (1) erred by rejecting his request that the

---

[1] After the conclusion of defendant's trial, this Court reversed the Court of Appeals'
decision in *Crump* on other grounds without reaching the self-defense issue that was before
us in that case. *See State v. Crump*, 376 N.C. 375 (2020).  Subsequently, however, we held in
*McLymore* that, in order for a defendant to be precluded from exercising the right of self-
defense on the basis of the felony disqualifier set out in N.C.G.S. § 14-51.4(1), "the State must
prove the existence of an immediate causal nexus between the defendant's disqualifying
conduct and the confrontation during which the defendant used force," effectively overruling
the aspect of the Court of Appeals' decision in *Crump* upon which the trial court relied in this
case. *McLymore*, ¶¶ 14, 30.

jury be instructed in accordance with N.C.P.I. – Crim. 308.10 and that the jury should presume that he had a reasonable fear of death or great bodily injury in light of the fact that he had been attacked in his own home; (2) committed plain error by failing to instruct the jury concerning defendant's "mistake of fact" in believing that his right to possess a firearm had been restored; and (3) erred by requiring defendant to pay restitution in the amount of $1,874.49 in light of the fact that the record developed at the sentencing hearing did not support that award.[2]  In support of the first of these three contentions, defendant argued that he was entitled to a "proper, complete instruction on self-defense, including the right to 'stand his ground' in his own home and have the jury presume his fear of death was reasonable," and asserted, without making any reference to *Crump*, that a literal reading of N.C.G.S. § 14-51.4(1) that had the effect of precluding him from taking advantage of the right of self-defense made available by N.C.G.S. §§ 14-51.2 and 14-51.3 for the sole reason that he was, as a convicted felon, prohibited from possessing a firearm would produce "absurd results."

¶ 19        In rejecting defendant's initial challenge to the trial court's judgments, the Court of Appeals concluded that, to the extent that defendant was seeking relief on

---

[2] In view of the fact that the second and third of the three challenges that defendant advanced in opposition to the trial court's judgments before the Court of Appeals have not been brought forward for our consideration, we will refrain from discussing them any further in this opinion.

the basis of the trial court's failure to instruct the jury that he was "presumed to have held a reasonable fear of imminent death or serious bodily harm to himself" at the time that he had been attacked by Mr. Dry, defendant had failed to preserve this issue for purposes of appellate review given that he had not requested the trial court to instruct the jury in accordance with N.C.P.I. – Crim. 308.80 (June 2021), which addresses a defendant's right to defend his or her home. *State v. Benner*, 276 N.C. App. 275, 2021-NCCOA-79, ¶ 21 (unpublished). In upholding the trial court's refusal to instruct the jury in accordance with N.C.P.I. – Crim. 308.10, the Court of Appeals determined that it was bound by its prior decision in *Crump*, which held that the disqualification provision set out in N.C.G.S. § 14-51.4(1) did not require the existence of a "causal nexus" between the disqualifying felony and the circumstances giving rise to the defendant's perceived need to use defensive force. *Id.*, ¶ 27 (citing *In re Civil Penalty*, 324 N.C. 373, 384 (1989)). As a result, the Court of Appeals found no error in defendant's first-degree murder conviction. *Id.*, ¶ 39. On 9 June 2021, this Court allowed defendant's petition for discretionary review of the Court of Appeals' decision.

## II.    Substantive Legal Analysis

### A. Standard of Review

¶ 20          This Court reviews decisions of the Court of Appeals for errors of law. N.C. R. App. P. 16(a); *State v. Melton*, 371 N.C. 750, 756 (2018). "In determining the propriety

of the trial judge's charge to the jury, the reviewing court must consider the instructions in their entirety, and not in detached fragments." *State v. Holden*, 346 N.C. 404, 438–39 (1997) (cleaned up). The trial court is required to give a requested instruction "only if the proposed charge is a correct statement of the law and is supported by the evidence." *State v. Bell*, 338 N.C. 363, 391 (1994) (citation omitted). In evaluating the extent to which a trial court did or did not err in refusing to instruct the jury in accordance with a defendant's request, we interpret the facts in the light most favorable to the defendant. *State v. McCray*, 312 N.C. 519, 529 (1985) (citation omitted). A trial court's erroneous refusal to instruct the jury in accordance with a criminal defendant's request will not result in a reversal of the trial court's judgment unless the error in question has prejudiced the defendant, with such prejudice having occurred in the event that the defendant shows that there is a "reasonable possibility that, had the trial court given the [required instruction], a different result would have been reached at trial." *State v. Lee*, 370 N.C. 671, 672 (2018); *see also* N.C.G.S. §§ 15A-1442(4)(d), 1443(a) (2021).

**B. Duty to Retreat Instruction**

¶ 21      In seeking to persuade us to overturn the Court of Appeals' decision, defendant begins by arguing that, in rejecting his request that the trial court instruct the jury in accordance with N.C.P.I. – Crim. 308.10, the trial court had deprived him of the right to a "complete self-defense instruction," so that he was entitled to a new trial.

*State v. Bass*, 371 N.C. 535, 542 (2018); *State v. Coley*, 375 N.C. 156, 159, 164 (2020).

According to N.C.P.I. – Crim. 308.10:

> If the defendant was not the aggressor and the defendant was [in the defendant's own home] [on the defendant's own premises] [in the defendant's place of residence] [at the defendant's workplace] [in the defendant's motor vehicle] [at a place the defendant had a lawful right to be], the defendant could stand the defendant's ground and repel force with force regardless of the character of the assault being made upon the defendant. However, the defendant would not be excused if the defendant used excessive force.

N.C.P.I. – Crim. 308.10 (footnotes omitted). N.C.P.I. – Crim. 308.10 is derived in part from N.C.G.S. §§ 14-51.2 and 14-51.3, which, by statute, authorize the exercise of the right to self-defense under certain circumstances. *See Bass*, 371 N.C. at 540–41. According to N.C.G.S. § 14-51.2(b), "[t]he lawful occupant of a home . . . is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm" in the event that the person against whom the defendant was using defensive force was attempting to "unlawfully and forcefully" enter the defendant's home, while N.C.G.S. § 14-51.2(f) provides that "[a] lawful occupant within his or her home . . . does not have a duty to retreat from an intruder in the circumstances described in this section" and N.C.G.S. § 51.2(g) clarifies that "[t]his section is not intended to repeal or limit any other defense that may exist under the common law."

¶ 22    According to defendant, N.C.P.I – Crim. 308.10, "particularly the language that a person in his home could 'repel force with force regardless of the character of the assault being made upon' him, describe[s] his common law right to use force, even deadly force, when defending himself in his own home."[3]  According to defendant, the trial court and the Court of Appeals both erred in relying upon the disqualification provision set out in N.C.G.S. § 14-51.4(1) to justify the rejection of his request that the jury be instructed in accordance with N.C.P.I. – Crim. 308.10 by ignoring the fact that N.C.G.S. § 14-51.2(g) precludes the use of N.C.G.S. § 14-51.4(1) "to repeal or limit" common law defenses.  As a result, defendant contends that the trial court's instructions to the jury were incomplete given that "a defendant entitled to *any* self-defense instruction is entitled to a *complete* self-defense instruction, which includes the relevant stand-your-ground provision," *Bass*, 371 N.C. at 542 (emphasis in original), and that a complete self-defense instruction would have informed the jury that defendant was entitled to "repel force with force regardless of the character of the assault being made upon [him]," N.C.P.I. – Crim. 308.10.

---

[3] According to the State, this aspect of defendant's challenge to the Court of Appeals' decision is not properly before us given that, "[b]eyond quoting N.C.P.I. – Crim. 308.10, [d]efendant made no argument to the Court of Appeals that he was not entitled to an instruction that he could repel force with force in his own home 'regardless of the character of the assault' " and given that "[q]uestions not presented to the Court of Appeals are not properly before [the Supreme Court]."  *See State v. Hurst*, 304 N.C. 709, 713 (1982) (per curium).  A careful review of the record persuades us, however, that defendant has argued at every stage of this case that the trial court erred by refusing to instruct the jury in accordance with N.C.P.I. – Crim. 308.10.

¶ 23     In defendant's view, he was clearly prejudiced by the trial court's erroneous refusal to instruct the jury in accordance with N.C.P.I. – Crim. 308.10 on the grounds that the record contained ample evidence tending to show that Mr. Dry had attacked him in his own home.  Defendant contends that, "[u]nder the facts, taken in the light most favorable to him, [defendant] was entitled to have the jury properly instructed on his common law and statutory right to use deadly force to defend himself in his home" "regardless of the character of the assault" given that the delivery of such an instruction would have "inform[ed] the [jury's] determination of whether [defendant's] actions were reasonable under the circumstances, which is a critical component of self-defense."  *See Lee*, 370 N.C. at 673–75.  After acknowledging that the jury knew that defendant had shot Mr. Dry when Mr. Dry was unarmed and that the jury had been told that defendant would not be entitled to have acted in self-defense in the event that he had used excessive force, defendant points out that "the jury was never told that he could use deadly force to repel non-deadly force in his own home."  As a result, defendant contends that "the [S]tate cannot show this constitutional error was harmless beyond a reasonable doubt."

¶ 24     In seeking to persuade us to uphold the Court of Appeals' decision with respect to this issue, the State begins by arguing that the trial court did not err in instructing the jury in accordance with N.C.P.I. – Crim. 308.10 on the grounds that, even if defendant was entitled to the delivery of an instruction like that set out in N.C.P.I. –

Crim. 308.10, "the trial court adequately convey[ed] the substance of [defendant's] request" to the jury, citing *State v. Godwin*, 369 N.C. 604, 613 (2017) (holding that, "[w]hen a defendant requests a special jury instruction that is correct in law and supported by the evidence, the court must give the instruction in substance" but that "the court is not required to give [the instruction] verbatim"), and *State v. Trull*, 349 N.C. 428, 455–56 (1998) (noting that "jury instructions should be as clear as practicable, without needless repetition"). After pointing out that the trial court had informed the jury that defendant would not be guilty of first-degree murder in the event that he acted in self-defense and that he had no duty to retreat in his own home, the State contends that, "[w]hen the use of defensive force is authorized, there is no meaningful difference between a stand-your-ground instruction and a no-duty-to-retreat instruction." According to the State, the reference to "regardless of the character of the assault" contained in N.C.P.I. – Crim. 308.10 "is intended to erase the distinction between simple and felonious assaults, vis-à-vis the duty to retreat, when a person is attacked in his home" and that, because the trial court in this case did not tell the jury that defendant had a duty to retreat from a simple assault, there was no need to qualify that instruction with respect to defendant's right to self-defense in his own home. Finally, the State contends that, because the trial court instructed the jury that defendant could use deadly force in self-defense and that he had no duty to retreat in his own home, defendant "fails to explain how the omitted

instruction would have added any substantive principle on which he could have been acquitted," so that defendant had failed to show that there was a "reasonable possibility" that the jury would have reached a different outcome had defendant's requested instruction been delivered.

¶ 25     The initial issue that we are required to address in evaluating the validity of defendant's challenge to the Court of Appeals' decision is whether defendant's proposed instruction rested upon a correct statement of the applicable law. *Bell*, 338 N.C. at 391. At the outset, we acknowledge that differences exist between the language in which N.C.P.I – Crim. 308.10 and N.C.G.S. §§ 14-51.2 and 14-51.3 are couched. Although N.C.P.I. – Crim. 308.10 cites N.C.G.S. §§ 14-51.2(f) and 14-51.3(a), the language used in this instruction antedates the enactment of these statutory provisions. In *State v. Morgan*, we quoted the 1983 edition of N.C.P.I. – Crim. 308.10, which provided that:

> If the defendant was not the aggressor and he was [in his own home] [on his own premises] [at his place of business] he could stand his ground and repel force with force regardless of the character of the assault being made upon him. However, the defendant would not be excused if he used excessive force.

315 N.C. 626, 643 (1986). The only difference between the 1983 and 2019 versions of N.C.P.I. – Crim. 308.10 is the addition of "the defendant's motor vehicle" and "a place the defendant had a lawful right to be" to the list of places in which a defendant was entitled to stand his or her ground, additions that clearly reflect the enactment of

N.C.G.S. §§ 14-51.2(b) and 14-51.3(a).  The 1983 instruction quoted in *Morgan*, in turn, appears to have been derived from our decision in *State v. Johnson*, which declares that,

> [o]rdinarily, when a person who is free from fault in bringing on a difficulty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, *regardless of the character of the assault*, but is entitled to stand his ground, *to repel force with force*, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. This, of course, *would not excuse the defendant if he used excessive force* in repelling the attack and overcoming his adversary.

261 N.C. 727, 729–30 (1964) (per curium) (citations omitted) (emphasis added).  Thus, defendant's contention that the portion of N.C.P.I. – Crim. 308.10 allowing him to "repel force with force regardless of the character of the assault being made upon [him]" appears rooted in common, rather than statutory, law.  As a result, the remaining issue that we must address is whether defendant was entitled to the delivery of the requested instruction in light of the facts of this case.

¶ 26 Despite the fact that, while the enactment of N.C.G.S. § 14-51.2 was not "intended to repeal or limit any other defense that may exist under the common law," N.C.G.S. § 14-51.2(g), we have held that the enactment of N.C.G.S. § 14-51.3 has supplanted the common law right to perfect self-defense to the extent that it addresses a particular issue, a fact that renders the disqualification provision set out

in N.C.G.S. § 14-51.4 potentially relevant to this case, assuming that the factual predicate necessary for the invocation of this disqualification exists. *See McLymore*, ¶ 12. According to the trial court and the Court of Appeals, the fact that defendant fatally wounded Mr. Dry while possessing a firearm after having been convicted of a felony compelled the conclusion that the justifications afforded by N.C.G.S. §§ 14-51.2 and 14-51.3 as reflected in N.C.P.I. – Crim. 308.10 were not available to him. Although this conclusion may be inconsistent with N.C.G.S. § 14-51.2(g), which upholds the continued validity of the common law with respect to the exercise of one's right to defend one's habitation, as well as our decision in *McLymore*, we need not reconcile any such inconsistency or address the manner in which the disqualification provision contained in N.C.G.S. § 14-51.4(1) should be applied in this case given that, as the State has argued, the trial court included the substance of the instruction upon which defendant's challenge to the Court of Appeals' decision rests in the remainder of its instructions to the jury.[4]

---

[4] Aside from the arguments addressed in the text of this opinion, the State contends that the trial court did not err by denying defendant's request that the jury be instructed in accordance with N.C.P.I. – Crim. 308.10 on the theory that defendant's requested instruction lacked sufficient evidentiary support. In the State's view, defendant "did not stand his ground when [Mr.] Dry attacked him in the kitchen" and, instead, "withdrew to the bedroom to retrieve a firearm." Aside from the fact that the evidence, when viewed in the light most favorable to defendant, would support an inference that Mr. Dry advanced upon defendant at a time when he was in his own residence and after defendant had retrieved a firearm, defendant is not required to have a weapon in his possession at all times in order to avoid the necessity of retreating when called upon to defend himself or herself in his or her own home. *Cf. State v. Miller*, 267 N.C. 409, 411 (1966) (stating that, when a homeowner fears that an

Even if a litigant is otherwise entitled to the delivery of a particular instruction, "the court is not required to give [it] verbatim"; instead, "it is sufficient if [the instruction is] given in substance." *Godwin*, 369 N.C. at 613. In other words, "[i]f the instructions given by the trial court adequately convey the substance of defendant's proper request, no further instructions are necessary," *id.* (cleaned up), with this being true even if the trial court relied upon an impermissible reason for refusing to deliver the requested instruction. At trial, the trial court instructed the jury in accordance with N.C.P.I – Crim. 206.10 that:

> The defendant would be excused of first degree murder and second degree murder on the grounds of self defense if, first, the defendant believed it was necessary to kill the alleged victim in order to save the defendant from death or great bodily harm and, second, the circumstances as they appeared to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.
>
> In determining the reasonableness of defendant's belief, you should consider the circumstances as you find them to have existed from the evidence, including the size, age and strength of the defendant as compared to the alleged victim, the fierceness of the assault, if any, upon the defendant, and whether the alleged victim had a weapon in the alleged victim's possession.
>
> The defendant would not be guilty of any murder or manslaughter if the defendant acted in self defense and if

---

intruder may attempt to inflict serious injury upon him or his family, "the law does not require such householder to flee or to remain in his house until assailant is upon him, but he may open his door and shoot his assailant, if such course is apparently necessary for the protection of himself or family") (cleaned up).

the defendant did not use excessive force under the circumstances.

A defendant does not have the right to use excessive force. A defendant uses excessive force if a defendant uses more force than reasonably appeared to the defendant to be necessary at the time of the killing. It is for you, the jury, to determine the reasonableness of the force used by the defendant under all of the circumstances as they appeared to the defendant at the time.

Furthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be. The defendant would have a lawful right to be in the defendant's home. Therefore, in order for you to find the defendant guilty of first degree murder or second degree murder, the State must prove beyond a reasonable doubt, among other things, that the defendant did not act in self defense.

Thus, the trial court clearly informed the jury that defendant had no duty to retreat before exercising the right to defend himself in his own home, with there being no material difference that we can see between an instruction that "defendant could stand the defendant's ground" and an instruction that defendant "has no duty to retreat." *See McCray*, 312 N.C. at 532. In addition, the trial court instructed the jury that defendant was entitled to exercise the right of self-defense in the event that he "believed it was necessary to kill [Mr. Dry] . . . to save [himself] from death or great bodily harm" and that his belief to that effect was reasonable in light of "the circumstances as they appeared to the defendant at the time," with this instruction being materially the same as an instruction that defendant had the right to "repel

[deadly] force with [deadly] force." *See* N.C.P.I – Crim. 308.10. As a result, given that the instructions that the trial court delivered to the jury included the substance of defendant's requested instruction, the trial court did not err by failing to instruct the jury using the exact language in which N.C.P.I. – Crim. 308.10 is couched. *See Godwin*, 369 N.C. at 613.

¶ 28       In defendant's view, however, the instructions that the trial court actually delivered did not suffice to obviate the necessity for overturning defendant's first-degree murder conviction because those instructions did not include any language concerning defendant's right to "repel force with force regardless of the character of the assault." In support of this argument, defendant directs our attention to *State v. Francis*, in which we held that the trial court erred by instructing the jury that "a person can't fight somebody with a pistol who is making what is called a simple assault on him, that is an assault in which no weapon is being used, such as a deadly weapon or a knife or a pistol," on the grounds that, "[o]rdinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling, or home . . . , the law imposes upon him no duty to retreat before he can justify his fighting in self-defense, —*regardless of the character of the assault*." 252 N.C. 57, 58–59 (1960) (emphasis added) (quoting *State v. Pennell*, 231 N.C. 651, 654 (1950)). We also noted in *Francis* that, in the event that a defendant was in his own home and was acting in defense of himself or his habitation, he "was not required to retreat in the face of a

threatened assault, *regardless of its character*, but was entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault." *Id*. at 59–60 (emphasis added) (internal citations omitted). In our opinion, defendant's reliance upon *Francis* is misplaced.

¶ 29        The essential defect that led us to grant the defendant a new trial in *Francis* was that the trial court's erroneous instruction "virtually eliminate[d] the defendant's right of self-defense since he used a pistol in connection with defending himself against a *simple assault*." *Id*. at 59 (emphasis added). Although we did use the expression "regardless of the character of the assault" in discussing the defendant's right to defend himself, the State is correct that our use of that language was intended to make it clear that there was no distinction between a simple and a felonious assault in determining whether a defendant had a duty to retreat before exercising the right of self-defense in his own home. On the other hand, *Francis* reiterates the well-established legal principle that, even though a defendant attacked in his own home is " 'entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault,' " such an entitlement " 'would not excuse the defendant if he used excessive force in repelling the assault,' " *Francis*, 252 N.C. at 758 (quoting *State v. Sally*, 233 N.C. 225, 226 (1951) (citations omitted)), a statement that indicates that the proportionality rule inherent in the requirement that the defendant not use excessive force continues to exist even in

instances in which a defendant is entitled to stand his or her ground. For that reason, a trial court need not use the expression "regardless of the character of the assault" in the absence of a concern that the jury would believe that the nature of the assault that the victim had made upon the defendant had some bearing upon the extent to which a defendant attacked in his own home has a duty to retreat before exercising the right of self-defense. *See also State v. Pearson*, 288 N.C. 34, 39–40 (1975); *State v. Frizzelle*, 243 N.C. 49, 50–51 (1955). In view of the fact that the trial court in this case made no distinction between a simple and a felonious assault in its instructions to the jury concerning the extent to which defendant was entitled to exercise the right of self-defense without making an effort to retreat and did not tell the jury that defendant was not entitled to use a firearm or any other form of deadly force in the course of defending himself from Mr. Dry's attack as long as he actually and reasonably believed that he needed to use deadly force to protect himself from death or great bodily injury, the trial court did not need to further clarify that defendant was entitled to exercise the right of self-defense "regardless of the character of the assault." *See Holden*, 346 N.C. at 439 (stating that "the reviewing court must consider [jury] instructions in their entirety, and not in detached fragments") (cleaned up).

Finally, we conclude that, even if the trial court erred by rejecting defendant's request that the jury be instructed in accordance with N.C.P.I. – Crim. 308.10,

defendant has failed to establish that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a)–(b);[5] *see also Lee*, 370 N.C. at 671 (concluding that the defendant had "shown a reasonable possibility" that a different result would have been reached at trial had the trial court given the requested stand-your-ground instruction). As we have already noted, the trial court instructed the jury in such a manner as to effectively inform it that defendant had the right to stand his ground in the event that he was attacked within his own residence and did not distinguish between attacks made upon him using deadly, as compared to non-deadly, force in those instructions. As we have already noted, in this case, unlike in *Lee*, the jury *was* told that defendant had no duty to retreat after having been attacked in his own home. Finally, the record contains more than sufficient evidence from which a reasonable jury could have determined that defendant used excessive force when he killed Mr. Dry. Thus, for all of these reasons, we hold that the trial court did not err by declining to instruct the jury in accordance with N.C.P.I. – Crim. 308.10 and that there is no reasonable possibility that the outcome would have been different had the

---

[5] Although defendant asserts that the trial court's alleged error was of a constitutional dimension, defendant did not object to the trial court's instructions on constitutional grounds prior to the beginning of the jury's deliberations and has failed to explain how the trial court's instructions violated any of his constitutional rights. As a result, the prejudicial effect of any instructional error that the trial court might have committed should be evaluated on the basis of the test set out in N.C.G.S § 15A-1443(a) rather than on the basis of the prejudice test applicable to constitutional errors set out in N.C.G.S. § 15A-1443(b).

trial court instructed the jury consistently with defendant's request. As a result, defendant is not entitled to any relief from the Court of Appeals' decision based upon the first of the two challenges that he has advanced in opposition to that decision before this Court.

## C. Presumption of Reasonable Fear Instruction

¶ 31    In the second of the two challenges to the Court of Appeals' decision that defendant has advanced before this Court, defendant contends that the Court of Appeals erroneously upheld the trial court's failure to afford him the benefit of a "complete self-defense instruction" by refusing to instruct the jury that he was "presumed to have held a reasonable fear of imminent death or serious bodily harm to himself" in light of the fact that he had been attacked in his own home. In defendant's view, he was entitled to the delivery of this instruction notwithstanding the trial court's invocation of the disqualifier contained in N.C.G.S. § 14-51.4(1). As the Court of Appeals correctly held, however, defendant failed to properly preserve his challenge to the trial court's alleged instructional error for purposes of appellate review.

¶ 32    "A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict . . . ." N.C. R. App. P. 10(a)(2). According to well-established North Carolina law, a party's decision to request the delivery of a

particular instruction during the jury instruction conference suffices to preserve a challenge to the trial court's refusal to deliver that instruction to the jury for further consideration by the appellate courts regardless of the extent to which the relevant party does or does not lodge a subsequent objection. *State v. Hood*, 332 N.C. 611, 616–17 (1992). *But see State v. Gay*, 334 N.C. 467, 486 (1993) (observing that "defendant has waived her right to review of this issue by failing to object to the trial court's omission of the requested instruction"). In addition, in the event that "the judicial action questioned is specifically and distinctly contended to amount to plain error," the extent to which the judicial action or inaction constitutes plain error may be argued before a reviewing court. N.C. R. App. P. 10(a)(4). On the other hand, if a party neither lodges a timely objection nor asserts that the trial court's action or inaction constituted plain error, all review of that alleged error, including plain error, has been waived. *State v. Bell*, 359 N.C. 1, 27 (2004).

¶ 33        In seeking to persuade us that the Court of Appeals erred by holding that he had failed to preserve for appellate review his challenge to the trial court's failure to instruct the jury that defendant had a reasonable fear that he was at imminent risk of death or great bodily harm in view of the fact that he had been assaulted in his own home, defendant states that, during the jury instruction conference, counsel for both parties discussed the extent to which defendant was entitled to the protections of N.C.G.S. §§ 14-51.2 and 14-51.3, "which include[ ] a presumption that his belief [in

the need to use deadly force] was reasonable if he was attacked in his own home." According to defendant, the existence of this discussion sufficed to preserve his challenge to the trial court's failure to deliver the relevant instruction to the jury, with the Court of Appeals having "muddled this point by noting that [defendant] did not request [N.C.P.I. – Crim.] 308.80, which concerns the defense of habitation" despite the fact that defendant had refrained from requesting the delivery of this instruction in light of the fact that he did not claim to have been defending his habitation. In addition, defendant contends that the Court of Appeals erroneously concluded that he was not entitled to the protections made available pursuant to N.C.G.S. §§ 14-51.2 and 14-51.3 based upon *Crump* and that "[r]eview of this issue would necessarily include the propriety of the trial court's instructions on self-defense that did not include statutory language about the presumption that [defendant's] fear of death or great bodily harm was reasonable."

¶ 34        The State, on the other hand, argues that the second of the two issues that defendant seeks to present for our consideration was not properly before the Court because this issue "was not stated in the [discretionary review] petition at all," with defendant having "never suggested . . . that the Court of Appeals erred by approving the omission of an instruction on the presumption established by" N.C.G.S. § 14-51.2(b). In addition, the State contends that "[d]efendant did not request any instruction that the jury should presume his fear of death or bodily harm was

reasonable" or argue "that the trial court plainly erred by omitting that instruction." As far as the merits of the second of defendant's two claims is concerned, the State contends that "the justification described in Sections 14-51.2 and 14-51.3 is not available to a person who used defensive force and who was committing a felony," citing N.C.G.S. § 14-51.4 (2019). Finally, the State asserts that defendant had "fail[ed] to explain how the omission of an instruction the jury should presume he had a reasonable fear of death or great bodily harm affected the result." As a result, for all of these reasons, the State urges us to refrain from granting any relief from the trial court's judgments on the basis of the second of defendant's instructional arguments.

¶ 35    The language that defendant believes that the trial court erroneously failed to include in its jury instructions, which refers to the fact that defendant was "presumed to have held a reasonable fear of imminent death or serious bodily harm" when assaulted in this own home, is taken verbatim from N.C.P.I. – Crim. 308.80. For that reason, instead of "muddling" defendant's argument, the Court of Appeals did nothing more than make reference to the source from which defendant derived his requested jury instruction. Moreover, as the Court of Appeals indicated, the transcript of the jury instruction conference shows that defendant never requested the trial court to instruct the jury that he was presumed to have a reasonable fear of imminent death or great bodily injury as a result of the fact that he had been assaulted in his home.

Instead, defendant simply requested, as we have already discussed, that the trial court instruct the jury in accordance with N.C.P.I – Crim. 308.10 before engaging in a colloquy with the prosecutor and the trial court concerning the extent to which defendant's status as a felon in possession of a firearm precluded the delivery of an instruction like that contained in N.C.P.I. – Crim. 308.10.

¶ 36       A careful review of the record satisfies us that, contrary to defendant's contention, a request to be afforded the protections made available by N.C.G.S. §§ 14-51.2 and 14-51.3 does not preserve his right to complain about the trial court's failure to instruct the jury in accordance with every sentence or clause contained in those statutory provisions. Instead, North Carolina Rule of Appellate Procedure 10(a)(2) requires that a party seeking to challenge an alleged instructional error on appeal must either specifically request an instruction that the trial court fails to deliver or object to the trial court's failure to deliver the relevant instruction in a timely manner. Defendant did not take either of these steps. As a result, since defendant failed to lodge an adequate objection to the trial court's failure to instruct the jury that defendant was presumed to have had a reasonable fear of imminent death or great bodily injury as required by Appellate Rule 10(a)(2) and since defendant failed to argue that the omission of the relevant instruction constituted plain error, *Bell*, 359 N.C. at 27, we will refrain from addressing this aspect of defendant's challenge to the trial court's instructions on the merits and decline to disturb the trial court's

judgments on the basis of the second of the two contentions that defendant has advanced before this Court.

### III. Conclusion

Thus, for the reasons set forth above, we hold that the trial court did not err by declining to instruct the jury in accordance with N.C.P.I. – Crim. 308.10 and that defendant has not preserved for any type of appellate review his challenge to the trial court's decision not to instruct the jury in accordance with N.C.P.I. – Crim. 308.80 that he was "presumed to have held a reasonable fear of imminent death or serious bodily harm to himself" in light of the fact that he had been attacked in his own home. As a result, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice HUDSON dissenting.

There is a significant difference between a person who, when unilaterally attacked in his own home, has the right to defend himself or herself with deadly force "regardless of the character of the assault," and a person who has the right to defend himself or herself with deadly force only if he or she has a reasonable belief that such force is "necessary . . . to save [himself or herself] from death or great bodily harm." In my view, that difference should be dispositive here. Because defendant was entitled to jury instructions that clearly established his right to self-defense "regardless of the character of the assault," I would hold that the trial court prejudicially erred in ruling otherwise. Accordingly, I respectfully dissent.

The key facts are clear and undisputed. After initially welcoming Damon Dry into his home, defendant told Dry to leave. Dry refused and instead pushed defendant against the sink and demanded money. Defendant pushed Dry off of him, opened the door, and again told him to leave. Dry pushed defendant into the door, again demanding money. A fight ensued. Defendant ran to his bedroom, retrieved his handgun, pointed it at Dry, and again told him to leave. When Dry subsequently charged at defendant, defendant shot Dry twice in the chest. Dry died from the wounds. In light of these undisputed facts, defendant's trial largely revolved around a single issue: whether defendant's killing of Dry was justified under his right to self-defense.

¶ 40        At trial, defendant requested that the trial court instruct the jury regarding

his right to self-defense using N.C.P.I. – Crim. 308.10. In pertinent part, this

instruction informs the jury that:

> If the defendant was not the aggressor and the defendant
> was [in the defendants own home][,] . . . the defendant
> could stand the defendant's ground and repel force with
> force *regardless of the character of the assault being made*
> *upon the defendant.*

N.C.P.I. – Crim. 308.10 (emphasis added). However, the trial court determined that

defendant was not eligible for this instruction because: (1) N.C.G.S. § 14-51.4(1), one

of the statutes from which defendant's requested jury instruction is derived, states

that "th[is] justification . . . is not available to a person who . . . [w]as attempting to

commit, committing, or escaping after the commission of a felony"; and (2) defendant,

at the time of the shooting, was "committing" the felony of being a felon in possession

of a firearm. Instead of the requested instruction, the trial court instructed the jury

in accordance with N.C.P.I. – Crim. 206.10. The trial court instructed:

> The defendant would be excused of first degree murder and
> second degree murder on the grounds of self defense if, first,
> the defendant *believed it was necessary to kill the alleged*
> *victim in order to save the defendant from death or great*
> *bodily harm* and, second, the circumstances as they appeared
> to the defendant at the time were sufficient to create such a
> belief in the mind of a person of ordinary firmness.
>
> In determining the reasonableness of defendant's belief, you
> should *consider the circumstances as you find them to have*
> *existed from the evidence, including the size, age and strength*
> *of the defendant as compared to the alleged victim, the*

> *fierceness of the assault, if any, upon the defendant, and*
> *whether the alleged victim had a weapon in the alleged*
> *victim's possession.*
>
> The defendant would not be guilty of any murder or
> manslaughter if the defendant acted in self defense and the
> defendant did not use excessive force under the
> circumstances.
>
> A defendant does not have the right to use excessive force. A
> defendant uses excessive force if a defendant uses more force
> than reasonably appeared to the defendant to be necessary at
> the time of the killing. It is for you, the jury, to determine the
> reasonableness of the force used by the defendant under all of
> the circumstances as they appeared to the defendant at the
> time.
>
> Furthermore, the defendant has no duty to retreat in a place
> where the defendant has a lawful right to be. The defendant
> would have a lawful right to be in the defendant's home.
> Therefore, in order for you to find the defendant guilty of first
> degree murder or second degree murder, the State must prove
> beyond a reasonable doubt, among other things, that the
> defendant did not act in self defense.

(Emphases added). Based on this instruction, the jury found defendant guilty.

On defendant's subsequent appeal, the Court of Appeals agreed with the trial court that defendant's ongoing felony—possessing a firearm as a felon—disqualified him from receiving jury instructions under N.C.P.I. – Crim. 308.10. *State v. Benner*, No. COA19-879, 2021 WL 978796 (N.C. Ct. App. Mar. 16, 2021) (unpublished). Specifically, the Court of Appeals relied on its previous decision in *State v. Crump*, 259 N.C. App. 144 (2018), *rev'd on other grounds*, 376 N.C. 375 (2020), that "the absence of a plain and explicit causal nexus [between the felony and the subsequent self-defense claim] enunciated in section 14-51.4(1) makes manifest that the General Assembly omitted it

purposefully and intended to limit the invocation of self-defense in this instance solely to the law-abiding." *Id.* at 151. Noting that it was "bound by *Crump*," the Court of Appeals ruled that the trial court did not err by declining to instruct the jury under N.C.P.I. – Crim. 308.10. *Benner*, 2021 WL 978796, at \*4.

¶ 42        Notably, though, in the time since the Court of Appeals ruled on this case below, this Court in *State v. McLymore* explicitly overruled *Crump's* holding that the felony disqualifier within N.C.G.S. § 14-51.4(1) does not require a causal nexus. 2022-NCSC-12, 14. Rather, we held that N.C.G.S. § 14-51.4(1) "requires the State to prove an immediate causal nexus between a defendant's attempt to commit, commission of, or escape after the commission of a felony and the circumstances giving rise to the defendant's perceived need to use force." *Id.* ¶ 1.

¶ 43        In light of *McLymore*, and because there is no causal nexus between defendant's possession of a firearm as a felon and the events giving rise to his need to exercise self-defense, it is clear that contrary to the rulings of the trial court and the Court of Appeals, defendant was *not* disqualified by N.C.G.S. § 14-51.4(1) from the justifications for defensive force enacted under N.C.G.S. §§ 14-51.2 and 14-51.3. Furthermore, the only reason that the trial court and the Court of Appeals provided for refusing to give defendant's requested instruction was that he was disqualified by N.C.G.S. § 14-51.4(1). In my view, defendant's request for a jury instruction reflecting those rights under N.C.P.I. – Crim. 308.10 was proper and should have been granted.

Accordingly, the critical question here is whether "the instructions given by the trial court adequately convey the substance of defendant's proper request." *State v. Godwin*, 369 N.C. 604, 613 (2017) (cleaned up) (quoting State v. Green, 305 N.C. 463, 477 (1982)).

¶ 44 The majority answers this question in the affirmative: "the trial court included the substance of the instruction upon which defendant's challenge to the Court of Appeals' decision rests in the remainder of its instructions to the jury." Specifically, although the trial court plainly did not instruct the jury on defendant's right to repel force with force "regardless of the character of the assault[,]" the majority interprets this Court's use of that expression in *State v. Francis*, 252 N.C. 57 (1960), as "intend[ing] to make it clear that there was no distinction between a simple and felonious assault in determining whether a defendant in his own home had a duty to retreat before exercising the right of self-defense in his own home."[1] "For that reason," the majority continues, "a trial court need not use [that] expression . . . in the absence of a concern that the jury would believe that the nature of the assault that the victim had made upon the defendant had some bearing upon the extent to which a defendant attacked in his own home has a duty to retreat before exercising

---

[1] Notably, neither the trial court nor the Court of Appeals relied upon or even mentioned *State v. Francis*, 252 N.C. 57 (1960), in their reasoning supporting the denial of defendant's jury instruction request; they relied only upon the felony disqualifier under N.C.G.S. § 14-51.4(1) which, for the reasons noted above, is now inapplicable here.

the right of self-defense." Accordingly, because "the trial court [here] clearly informed the jury that defendant had no duty to retreat before exercising the right to defend himself in his own home," the majority concludes that the trial court "did not need to further clarify that defendant was entitled to exercise the right of self-defense 'regardless of the character of the assault.' "

¶ 45    I understand *Francis* differently and accordingly would reach a different conclusion. In *Francis*, the trial court instructed the jury that

> in determining the degree of force one may use [in self-defense], the law permits a person to use such force as reasonably necessary to protect himself, and he can even go to the extent of taking human life where it is necessary to save himself from death or great bodily harm, but if he uses more force than is reasonably necessary he is answerable to the law.

252 N.C. at 59. This instruction essentially recognized a right to proportional self-defense: the defendant would be justified in using deadly force in his home or place of business only if facing potentially deadly force himself.

¶ 46    On appeal, this Court determined that this portion of the jury instruction was erroneous because it "virtually eliminates the defendant's right of self-defense since he used a pistol in connection with defending himself against a simple assault." *Id.* "Ordinarily," we reasoned, "when a person[ ] who is free from fault in bringing on a difficulty[ ] is attacked in his own dwelling, . . . the law imposes upon him no duty to retreat before he can justify his fighting in self-defense,—*regardless of the character*

*of the assault." Id.* (quoting *State v. Pennell*, 231 N.C. 651, 654 (1950)).

¶ 47       Where the majority above narrowly interprets this reasoning to indicate that the emphasized language was only "intended to make it clear that there was no distinction between a simple and felonious assault in determining whether a defendant had a duty to retreat in his own home[,]" I understand it to more broadly emphasize a defendant's right to engage in nonproportional self-defense within his home—that is, "he can justify his fighting in self-defense . . . *regardless of the character of the assault." Francis*, 252 N.C. at 59. Under this interpretation, instructing a jury that a defendant has no duty to retreat, which the trial court functionally did here, is plainly not the same as instructing a jury that a defendant may use force of a character different from that used by an attacker in repelling an attack in his home, which it did not.

¶ 48       Instead, the trial court here made the same misstep that the *Francis* Court ruled erroneous: it instructed the jury that the defendant's right to use deadly force in self-defense was contingent upon a reasonable belief that such force was necessary "in order to save the defendant from death or great bodily harm." It further instructed that the reasonableness of this belief depended on the essential proportionality of defendant's response in light of "circumstances . . . from the evidence, including the size, age and strength of the defendant as compared to the alleged victim, the fierceness of the assault, if any, upon the defendant, and whether the alleged victim

had a weapon in [his] possession." In doing so, just as in *Francis*, the trial court's "instruction virtually eliminate[d] the defendant's right of self-defense since he used a pistol in connection with defending himself against a simple assault." *Id*. I would hold that this constituted error.

¶ 49    Ultimately, though, while *Francis* helps inform the outcome here, it is not dispositive. Indeed, neither the trial court nor the Court of Appeals mentioned *Francis* in their analysis supporting the denial of defendant's requested jury instruction; they relied exclusively on the no longer viable reading of N.C.G.S. § 14-51.4(1)'s felony disqualifier as discussed by the Court of Appeals in *Crump*. *See McLymore*, 2022-NCSC-12, ¶ 14 (overruling *Crump's* interpretation of the felony disqualifier and requiring a causal nexus). Instead, the critical question here is simply whether or not the given instructions "adequately convey[ed] the substance of defendant's proper [jury instruction] request." *Godwin*, 369 N.C. at 613 (quoting *Green*, 305 N.C. at 477). To answer this question, we need only compare the substance of the requested instruction—which, as noted above, defendant was entitled to in light of *McLymore*—with that of the given instruction.

¶ 50    Here, the given instruction omitted a key justification for defensive force enacted under N.C.G.S. §§ 14-51.2 and 14-51.3 as integrated into the requested instruction: that "defendant could stand [his] ground and repel force with force *regardless of the character of the assault being made upon* [*him*]." N.C.P.I. – Crim.

308.10 (emphasis added). Although we agree with the majority that the trial court's instruction that defendant had "no duty to retreat" is functionally the same as an instruction that defendant "could stand [his] ground," the given instruction still excludes a key element from N.C.P.I. – Crim. 308.10: instructing the jury that defendant's right to self-defense in his home operated "regardless of the character of the assault." Because the inclusion or omission of this phrase unilaterally determines whether or not defendant was justified in using a handgun to defend himself against Dry's physical attack on him, its omission by the trial court constitutes a meaningful substantive difference between the requested and given instructions. Accordingly, I would hold that the trial court and Court of Appeals erred below.

¶ 51    Further, I disagree with the majority that defendant has failed to establish that this error was prejudicial. Because defendant admitted that he shot Dry, the only question for the jury to resolve here was whether defendant's actions were justified. By failing to give the defendant's requested instruction, the trial court's error bore on the only issue that the jury had to decide. Specifically, the jury instruction that was given limited the scope of what the jury could consider in determining whether defendant had the right to use deadly force even if it had not been wielded against him. In determining whether defendant's use of deadly force was justified, under the proper instruction, the jury would not necessarily need to consider whether Dry used a weapon, the nature of his assault on defendant, or his

age, strength, or size. These factors directly speak to "the character of the assault being made upon defendant," which, under the proper instruction, would be irrelevant. Because the two instructions are clearly distinct, I would hold that the error was clearly prejudicial.

¶ 52     Finally, because I would find that the prejudicial error noted above independently requires reversal and remand, I would not reach the second issue regarding defendant's preservation of the instruction on the presumption of reasonable fear.

¶ 53     Accordingly, I respectfully dissent.

Justice EARLS joins in this dissenting opinion.