IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-837

Filed 7 May 2024

Polk County, Nos. 16CRS50264, 16CRS50269

STATE OF NORTH CAROLINA

v.

KWAME FERNANDERS, Defendant.

Appeal by defendant from judgment entered 8 September 2022 by Judge Martin B. McGee in Polk County Superior Court. Heard in the Court of Appeals 2 April 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Marc Bernstein, for the State-appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for defendant-appellant.*

GORE, Judge.

Defendant, Kwame Fernanders, appeals his conviction for first-degree murder and possession of a stolen vehicle. Defendant was sentenced to life imprisonment without possibility of parole for first-degree murder and the trial court arrested judgment for the conviction of possession of a stolen vehicle. Defendant seeks review of the trial court's multiple evidentiary rulings and its denial of his motion to sever the charges. Upon review of the briefs, the record, and case law, we conclude the trial court did not err.

**I.**

Defendant, his girlfriend Kayla Black, and his friend Quintae Edwards met and began driving in defendant's car from Greenville, South Carolina, late on 30 March 2016. Early in the morning on 31 March 2016, they stopped at a gas station. Defendant and Edwards left Black but soon returned driving a red Ford Mustang. They left defendant's car and drove off in the red Ford Mustang headed toward North Carolina. Different angles of video footage and still shots of the footage, admitted during trial, revealed defendant and Edwards had broken into Reliable Rides and stolen the red Ford Mustang from the facility. In the videos, defendant and Edwards were wearing the same clothes they were later sighted in just prior to the shooting; defendant was also seen with a gun and wearing a pair of brown and yellow work gloves.

At approximately 5:00 a.m., they stopped at a BP gas station in Polk County, North Carolina. The gas station was not open at the time, so they waited for it to open. Prior to the gas attendant opening the station, Black testified, and the gas attendant testified, that defendant wanted to rob the attendant, but Black had held him back from doing so. After buying gas, Black drove the Ford Mustang towards the interstate with defendant seated in the front seat and Edwards seated in the back seat.

As they drove onto the ramp, they saw a "box truck" parked on the side of the ramp and stopped by it to get directions. Destry Horne was the driver of the truck and had stopped while in the middle of making a furniture delivery. Black testified

- 2 -

she was trying to fix her GPS while defendant pulled down his window and began talking to Horne. Black testified Horne was polite and defendant was also talking politely, but defendant quickly became aggressive. Black heard Edwards say, "Do it, bro" from the back seat and defendant told Black to turn her head away.

Immediately after she turned her head, Black heard a gunshot and looked in time to see defendant pulling his arm with the gun in his hand back into the car. Black drove away quickly, and not long after, Horne was discovered unresponsive and bleeding in the truck. He was later pronounced dead from a gunshot wound. A police officer, who testified at trial, had seen the box truck and the Mustang parked around 5:40 a.m. as he drove by, but he did not investigate because it was common to see vehicles stopped at the on ramp. He was called to the scene approximately ten to fifteen minutes later. The police officer discovered a spent .40 caliber cartridge casing on the ground near the truck.

Police obtained the video footage from the BP gas station of the Mustang, defendant, Edwards, and Black, and issued images to the public to identify them. The police department's surveillance camera caught the Mustang driving by just after the shooting, headed towards South Carolina. Defendant, Black, and Edwards were recognized in a couple different locations as they drove south, and they evaded arrest while in Landrum, South Carolina, and Gainesville, Florida. While in South Carolina, they abandoned the Mustang and were later seen driving in a maroon Subaru. Prior to the arrest, Black testified at trial that she, defendant, and Edwards

had broken into a college apartment and robbed college students. According to Black's testimony, one student was taken with her and defendant to an ATM to withdraw money. Black testified that defendant used the same gun during this break in and robbery that he used in the shooting.

Defendant, Edwards, and Black were later apprehended and arrested at a Best Western in Tallahassee, Florida on 4 April 2016. Police officers recovered a gun (located beside defendant at the time of arrest), the keys to the maroon Subaru, and recovered yellow and brown work gloves and twenty-seven .40 caliber Smith & Wesson Aguila rounds in the Subaru.

Defendant was charged with first-degree murder and possession of a stolen motor vehicle. Defendant filed a pre-trial motion to sever the charges for trial. The trial court denied defendant's motion and granted the State's motion to join the charges. Defendant renewed his motion to sever the charges at the close of the State's evidence and at the close of all the evidence. During trial, defendant made multiple specific objections: to the admission of video footage and still shots from the footage at Reliable Rides; to Black identifying defendant and his gun in the video footage and still shots from Reliable Rides; to Black's testimony of the robbery in Gainesville, Florida; to the State's tender of their expert, Coudriet, as a ballistics expert; and to Coudriet's opinion that the .40 caliber cartridge casing recovered from the scene was fired from the gun retrieved at defendant's arrest. The jury returned guilty verdicts for both charges. The trial court arrested judgment on the possession of a stolen

motor vehicle conviction and sentenced defendant to life imprisonment without possibility of parole for the first-degree murder conviction. Defendant timely appealed the judgment.

## II.

Defendant appeals of right pursuant to N.C.G.S §§ 7A-27(b) and 15A-1444(a). Defendant challenges multiple evidentiary rulings made by the trial court. Defendant argues the trial court erred with the following evidentiary rulings: (1) by admitting evidence of the Gainesville robbery through Kayla Black's testimony; (2) by allowing Kayla Black to identify the gun displayed in the video footage and photographs of the break in at Reliable Rides; (3) by admitting ten videos and five photographs from the break in at Reliable Rides; (4) by denying defendant's motion to sever the first-degree murder charge from the possession of a stolen motor vehicle charge; (5) by allowing the State's expert witness to testify the used .40 caliber cartridge casing, retrieved by the truck, was fired from the gun seized in defendant's hotel room; and (6) through the cumulative errors committed by the trial court. Defense counsel objected to and preserved each issue for review.

## A.

Defendant first argues the trial court erred by allowing Kayla Black to testify about the Gainesville robbery and kidnapping under Rule 404(b). Specifically, defendant argues the trial court erred by allowing the testimony as proof of defendant's identity and to show the chain of events that took place. We review de

novo the legal conclusion that the evidence is . . . within the coverage of Rule 404(b)." *State v. Pabon*, 380 N.C. 241, 257 (2022) (citation omitted). "[I]f an appellate court reviewing a trial court's Rule 404(b) ruling determines . . . that the admission . . . was erroneous, it must then determine whether that error was prejudicial." *Id.* at 260.

Rule 404(b) is a rule of inclusion that "lists numerous purposes for which evidence of prior acts may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012) (quoting N.C. R. Evid. 404(b)) (internal quotation marks omitted). The list is broader than the specified purposes when the evidence "is relevant to any fact or issue other than the defendant's propensity to commit the crime." *Id.* Courts constrain the inclusive nature of Rule 404(b) by balancing it with similarity and proximity. *Id.* at 131.

We presume, *arguendo*, the trial court erred by admitting the testimony about the robbery and kidnapping in Gainesville under Rule 404(b) and consider whether the error was prejudicial. Defendant has the burden to demonstrate "whether there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial." *Pabon*, 380 N.C. at 260 (quoting N.C.G.S. § 15A-1443(a) (2021)).

In the present case, defendant fails to demonstrate "there is a reasonable possibility . . . a different result would have been reached at trial." *Id.* In fact, defendant articulates there is other evidence available to "directly tie [defendant] to

the weapon both in North Carolina and Florida." The other evidence properly admitted includes: Black's testimony that defendant kept the gun on him and had the gun in his hand right after shooting Horne; the testimony of defendant's agitation and aggression prior to shooting Horne; testimony defendant had attempted to rob the gas attendant at the gas station just prior to the shooting; testimony that defendant had told Black to turn her head prior to shooting Horne; Black's testimony that they fled once they found out the shooting victim had died; the gun seized in the hotel where defendant was arrested; and Black's testimony defendant stated, "if we get caught, it is going to be a shoot-out." Accordingly, this other overwhelming evidence altogether suggests a reasonable jury could still come to the same conclusion without this Rule 404(b) evidence.

**B.**

Next, defendant argues the trial court erred by allowing Black to identify the gun in the Reliable Rides video footage and photographs as a lay witness under Rule 701. She identified the gun in Reliable Rides footage as the same gun defendant used in the shooting of Horne. We review challenges to Rule 701 for abuse of discretion. *State v. Thomas*, 281 N.C. App. 159, 177 (2021), *rev. denied*, 878 S.E.2d 808 (2022) (Mem.); *see State v. Williams*, 363 N.C. 689, 701 (2009) (cleaned up) ("We review for abuse of discretion, looking to whether the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."). If we determine the trial court erred by allowing the lay opinion

testimony, we must then consider whether the error was prejudicial. *State v. Belk*, 201 N.C. App. 412, 418 (2009), *writ denied, rev. denied,* 364 N.C. 129 (2010) (Mem.).

Lay opinion testimony is acceptable when two factors are present. *Id.* at 414. The testimony must be "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of [her] testimony or the determination of a fact in issue." *Id.* (quoting N.C. R. Evid. 701). This Court previously stated various factors to weigh when determining whether lay opinion testimony is proper. *Thomas*, 281 N.C. App. at 178–79 (quoting *Belk*, 201 N.C. App. at 415–16) (listing factors such as the "witness's familiarity," with what she is identifying, and her familiarity at the time the identified object was photographed; any "disguised" appearance in the images or during the incident; and the quality of the images or videos shown to the jury).

We do not weigh in on what factors support defendant's argument as opposed to the factors that support the State's argument, because even if there was an abuse of discretion, it was not prejudicial to the jury's verdict. Defendant does not carry his burden to demonstrate prejudice, by simply suggesting that without the opinion testimony, the jury could have "possibly" reached a different verdict for lack of premeditation and deliberation. The evidence in the record demonstrates Black saw defendant with the gun leading up to and immediately after the shooting. Black testified defendant told her to turn her head prior to shooting Horne, and that defendant had also attempted to rob a gas attendant just prior to the murder.

Accordingly, we disagree with defendant's analysis asserting little evidence in the record supports the State's argument that defendant had "violence on his mind," and determine despite any presumed error under Rule 701, it was not prejudicial.

**C.**

Next, defendant argues the trial court erred by allowing the State to admit ten videos and five photographs from Reliable Rides of defendant stealing the red Mustang. Defendant argues under Rule 403 that the probative value of the videos and images were substantially outweighed by undue prejudice and cumulative evidence. We review challenges to a Rule 403 determination for abuse of discretion. *Beckelheimer*, 366 N.C. at 133. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." N.C. R. Evid. 403.

Defendant argues the repetition of the videos and the photographs were "unnecessarily repetitive" and "added nothing." He also argues the State's closing argument had the effect of causing the jury "to hold [defendant] accountable for being a person with violence on his mind." We disagree.

"Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs . . . lies within the discretion of the trial court." *State v. Hennis*, 323 N.C. 279, 285 (1988). "Unfair prejudice means an undue tendency to suggest a decision on an improper basis, usually an emotional one." *Id.* at 283.

> Evidence which is offered solely for the purpose of creating sympathy for the accused . . . should be excluded. However, evidence which is otherwise competent and material should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible.

*State v. Hudson*, 218 N.C. 219, 231 (1940).

In the present case, defendant was indicted for possession of a stolen motor vehicle. The State called a manager from Reliable Rides to testify. Part of her testimony was to explain the various locations revealed in the videos, because the videos each displayed different angles of the business. The videos and photographs revealed who had stolen the vehicle and highlighted the gun and the gloves used during the incident. These items were later seized when defendant was arrested. The photographs were used by the State to capture moments from the videos and to question Black for identification purposes.

Having reviewed the exhibits admitted by the State, we determine they were not excessive nor unduly prejudicial when compared to their probative value. These exhibits gave a full picture of the incident as each video provided a different angle of the business and connected the evidence discovered during defendant's arrest. We determine any prejudicial nature or repetition did not substantially outweigh the probative value of the videos and photographs. The trial court did not abuse its discretion by admitting the exhibits over defendant's objections.

**D.**

Defendant argues the trial court erred by denying his motion to sever the murder charge from the possession of a stolen vehicle charge. Defendant argues the joinder prevented him from having a fair trial on the murder charge, and now seeks a new trial. We review the trial court's denial of the motion to sever the charges for abuse of discretion. *State v. Knight*, 262 N.C. App. 121, 124 (2018).

The trial court considers whether the charges defendant seeks to sever have a "transactional connection" and "whether the defendant can receive a fair hearing" should the charges remain consolidated for trial. *State v. Larkin*, 237 N.C. App. 335, 349 (2014). To determine whether there is a transactional connection, we consider the following factors: "(1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case." *State v. Perry*, 142 N.C. App. 177, 181 (2001) (citation omitted).

In the present case, we disagree with defendant's assertion the charges lacked a transactional connection. Defendant came into possession of the Mustang around 2:30 a.m. and committed the shooting around 5:45 a.m the same morning. Defendant was in possession of a gun in the videos at Reliable Rides that looked similar to the gun discovered upon his arrest. Additionally, defendant was in possession of the stolen Mustang when he shot Horne. While it is possible to distinguish aspects of the charges, defendant has failed to show the trial court abused its discretion by denying the motion to sever.

Further, we disagree with defendant's assertion that the joinder of the charges prevented him from obtaining a fair trial. Defendant once again argues without this joinder the jury might not have found defendant premediated or deliberated the shooting. As previously discussed, other substantial evidence leading up to the shooting allows the jury to find the existence of premeditation and deliberation. Accordingly, the trial court did not abuse its discretion and defendant was not prevented from obtaining a fair trial by the joinder of charges.

**E.**

Defendant argues the trial court abused its discretion by allowing the State's expert opinion under Rule 702. Specifically, defendant argues the expert's testimony was not based upon reliable methods and principles nor sufficient facts or data under Rule 702(a)(1) and 702(a)(3). These arguments are in opposition to the expert's testimony that the .40 caliber cartridge casing found at the scene of the shooting was fired from the same gun seized during defendant's arrest in Florida. We review challenges to Rule 702 for abuse of discretion. *State v. Godwin*, 369 N.C. 604, 610–11 (2017). The ruling must be "manifestly unsupported by reason and . . . not . . . the result of a reasoned decision" for us to determine the trial court abused its discretion. *State v. Miller*, 275 N.C. App. 843, 848 (2020), *rev. denied, dismissed by* 377 N.C. 211 (2021) (Mem.).

North Carolina Rules of Evidence 702(a) states the requirements to admit an expert and admit their opinion:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:

(1) The testimony is based upon sufficient facts or data.

(2) The testimony is the product of reliable principles and methods.

(3)  The witness has applied the principles and methods reliably to the facts of the case.

N.C. R. Evid. 702(a).

Also known as the *Daubert* reliability test, subsections (a)(1)–(a)(3) must all be demonstrated in the expert's testimony to be admissible. *State v. McGrady*, 368 N.C. 880, 890 (2016) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)). "The primary focus of the inquiry is on the reliability of the witness's principles and methodology, not on the conclusions that they generate." *Id.* (cleaned up).  If there is "too great an analytical gap between the data and the opinion proffered, the court is not required to admit opinion evidence that is connected to existing data . . . ." *Id.* (cleaned up).

Defendant argues the expert's testimony did not meet prongs (a)(1) and (a)(3). Defendant points to the portion of the expert's testimony in which she concluded the field test cartridge casings matched the .40 caliber cartridge casing found at the scene of the shooting.  Defendant relies upon *State v. McPhaul* to support his contention

that the expert failed to explain how the cartridges matched. 256 N.C. App. 303, 314–16 (2017). Having reviewed *McPhaul* and compared it to the transcripts in this case, we disagree with defendant's argument.

The State's expert not only explained the standards she had followed, but also explained how she had applied these standards within the context of the cartridges in the present case. Whereas, in *McPhaul*, the expert explained her procedures but then provided sparse answers to the basis for her conclusion. *Id.* at 315–16. In fact, the prosecutor provided more detail in his questions than the expert with her answers in *McPhaul*. *Id.* This amounted to the expert "implicitly ask[ing] the jury to accept her expert opinion." *Id.* at 316. Accordingly, the trial court did not abuse its discretion by determining the expert "applied the principles and methods reliably to the facts of the case, as required by Rule 702(a)(3)." *Id.*

Further, the trial court did not abuse its discretion by determining the expert's testimony was "based upon sufficient facts or data." N.C. R. Evid. 702(a)(1). The expert had a .40 caliber casing from the site of the shooting, the gun seized during defendant's arrest, and the bullet removed from Horne's body. The expert used the gun to conduct test fires and compare the test casings with the casing and bullet from the shooting scene and victim. The expert discussed the instruments and tests conducted with the evidence. Defendant argues about the expert's statement asserting there is no error rate in this type of ballistics testing, but defendant was given opportunity to discredit the expert during cross-examination on this very topic.

Additionally, defendant argues against the admission of the expert's opinion because it is "inherently subjective" and there were recent studies airing concerns with definitive statements from experts in the ballistic field due to its subjective basis. In support of this argument, defendant points to non-binding federal case law and a dissent in the *Miller* case. *See United States v. Ashburn*, 88 F. Supp. 3d 239, 243–244 (E.D.N.Y. 2015); *Miller*, 275 N.C. App. at 856–57 (2020) (Zachary, J. concurring in part and dissenting in part). However, defendant's argument is unpersuasive to this Court given his ability to vigorously cross-examine the expert witness and challenge her credibility on those very grounds. Indeed, on cross-examination, defendant exposed the inconsistencies in the ballistics field by further unpacking the expert's statement that there is no known error rate. Instead of an "impression of definitiveness," defendant cast doubt on the validity of the expert's opinion. That aside, it was within the purview of the jury to determine the weight and credibility of the expert's opinion. Defendant points to no North Carolina case law to demonstrate that the purported lack of an error rate in the ballistics field negates the expert's opinion in this case.

When we consider the trial court's consideration of the evidence, multiple arguments, case law, and reports prior to making its determination, we cannot say its decision was "manifestly unsupported by reason." *Miller*, 275 N.C. App. at 848. The trial court allowed extensive voir dire of the expert by counsel; the trial court considered reports challenging the validity of the expert's approach to firearm

tracing; the trial court limited the expert's testimony to not use the word "unique" or compare the tracing of the cartridges to fingerprints and signatures; and defendant was able to cross-examine the expert regarding the reliability of her methods and principles as applied to the evidence. These steps taken together demonstrate that the trial court properly determined threshold knowledge and qualifying admissibility and did not abuse its discretion by allowing admission of the expert's opinion.

Having considered defendant's multiple arguments, and having determined the combination of the trial court's decisions were not demonstrated to be abuses of discretion nor prejudicial, we disagree with defendant's argument of cumulative error. The trial court overruled multiple objections by discretionary means. Accordingly, defendant was not deprived of a fair trial.

**III.**

For the foregoing reasons, the trial court did not err nor prejudicially err.


NO ERROR.

Judge TYSON concurs.

Judge STROUD concurs in result.